594 A.2d 365

**Mary Ann CLAYTON and Robert G. Clayton, Her Husband, Appellants,**

v.

**George SABEH, M.D., Appellee.**

Superior Court of Pennsylvania.

Argued June 4, 1991.

Decided July 17, 1991.

Petition for Allowance of Appeal Denied Dec. 13, 1991.

Harry S. Cohen, Pittsburgh, for appellants.

John W. Jordan, IV, Pittsburgh, for appellee.

Before OLSZEWSKI, HUDOCK and HOFFMAN, JJ.

OLSZEWSKI, Judge:

This is an appeal from an order denying a post-trial motion requesting a new trial. Mary Ann Clayton, now deceased, and her husband, Robert Clayton, brought suit against Doctor George Sabeh, alleging that Dr. Sabeh's failure to order breast cancer screening procedures resulted in delay in diagnosing Mrs. Clayton's cancer, thereby increasing the risk that the cancer would prove fatal. Following trial, the jury returned a verdict in favor of Sabeh. Timely post-trial motions were filed and denied. This appeal followed.

On appeal, the Claytons argue that the trial court's charge to the jury was inherently contradictory and confused the jury, which, they contend, rendered an inconsistent verdict. Having reviewed the charge complained of and the applicable law, we find no error and so affirm the trial court's order.

The evidence which bears on the issue appealed may be summarized as follows. The Claytons presented expert testimony that Dr. Sabeh's failure to perform a breast cancer screening procedure upon Mrs. Clayton increased her risk of allowing such a cancer to go untreated. (Reproduced Record [R.R]. at 37a.) Further, that given early detection, Mrs. Clayton had a reasonable chance of surviving breast cancer. (R.R. at 21–23a.) The Claytons admit that Dr. Sabeh presented expert testimony that Mrs. Clayton would have died of the cancer even if the breast cancer screening procedure advocated by the Claytons' expert had been performed. (Appellants' brief at 6.) It is undisputed that Mrs. Clayton died as a result of a breast cancer which metastasized to her spine.

Initially, we note our role when examining a challenge to the trial court's charge to the jury. Alleged errors in jury instructions must be considered in relation to the entire charge and in light of the evidence presented. *Brennan v. St. Luke's Hospital*, 446 Pa. 339, 344, 285 A.2d 471, 474 (1971) (citation omitted); *Albert v. Albert*, 252 Pa.Su-

per. 203, 216, 381 A.2d 459, 466 (1977) (citations omitted). If the charge has a tendency to mislead or confuse rather than clarify a material issue, a new trial is indicated. *Glider et ux v. Commonwealth Dept. of Highways*, 435 Pa. 140, 151, 255 A.2d 542, 547 (1969) (citation omitted). The trial court has a responsibility to charge on all relevant issues. *Berry v. Friday*, 324 Pa.Super. 499, 504, 472 A.2d 191, 193 (1984) (citations omitted). With these standards in mind, we examine the Claytons' claim.

While charging the jury, the trial court delivered Pennsylvania Suggested Standard Jury Instruction 10.03B(Civ), which reads as follows:

The defendant-physician, such as Dr. Sabeh, is legally responsible or liable for the injuries suffered by his patient if the defendant's negligent conduct is a legal cause of those injuries. In order for the negligent conduct to be a legal cause, that conduct must have been a substantial factor in bringing about the injuries in question. If the injuries in question would have been sustained even if the physician had not been negligent, then the negligent conduct of the defendant physician would not be a substantial factor in causing the injuries in question.

Stated differently, the negligent conduct of the defendant physician is a substantial factor in causing his patient's injuries if the injuries would not have been sustained, had the physician not acted in a negligent manner.

When a defendant physician, such as Dr. Sabeh, negligently fails to act or negligently delays in employing indicated diagnostic or therapeutic measures and his negligence is a substantial contributing factor in causing injuries to his patient, the plaintiff does not have to prove to a certainty that proper care would have, as a medical fact, prevented his injuries in question. If a defendant-physician's negligent action or inaction has effectively terminated his patient's chances of avoiding injuries, he may not raise conjectures as to the measure of the chances that he has put beyond the possibility of realiza-

tion. If there was any substantial possibility of avoiding injuries and the defendant has destroyed that possibility, he is liable to the plaintiff. A causal connection between the injuries suffered and the defendant's failure to exercise reasonable care may be proved by evidence that the risk of incurring those injuries was increased by the defendant's negligent conduct. The law recognizes that it is rarely possible to demonstrate to an absolute certainty what would have happened in circumstances that the wrongdoer did not allow to come to pass.

(Trial transcript [T.T.] at 474–76.) During deliberations, the jury requested clarification on the issue of professional causation. The trial court repeated the above-listed charge. (T.T. at 525–26.)

The Claytons complain that subsection (b) of the suggested instruction given (the third paragraph recited above) is meant to apply to a different factual situation from that which requires subsection (a) (the first two paragraphs recited above). Thus, the Claytons conclude that it was erroneous for the trial court to include both subsections in its charge. We do not agree.

The essence of the Claytons' argument is that once evidence has been presented establishing conduct by a defendant-physician which increased a risk of a specific harm to the patient-plaintiff along with evidence indicating that the specific harm did in fact occur, causation has been proven. This position overlooks one key element of the increased risk line of cases. Those cases *allow* a jury to find that the conduct which gave rise to an increased risk was the legal cause of a plaintiff-patient's injuries, but *they do not require the jury to do so.* Once a plaintiff has established conduct giving rise to an increased risk of harm, "such evidence furnishes a basis for the fact-finder to go further and find that such increased risk was in turn a substantial factor in bringing about the resultant harm; the necessary proximate cause will have been made out if the jury sees fit to find cause in fact." *Hamil v. Bashline,* 481 Pa. 256, 272, 392 A.2d 1280, 1288 (1978). "[I]t becomes a

question for the jury as to whether or not that increased risk was a substantial factor in producing the harm." *Id.,* 481 Pa. at 269, 392 A.2d at 1286. The evidence of increased risk merely makes out a *prima facie* case of liability. *Id.,* 481 Pa. at 273–74, 392 A.2d at 1289.

Our Supreme Court's latest pronouncement in this area reaffirms the requirement that the jury must find the increased risk to be a substantial factor in the resultant harm before liability attaches:

> [O]nce a patient-plaintiff shows that a physician-defendant's negligence increased the risk of harm and that harm actually occurred, sufficient evidence has been offered to submit the case to a jury. The jury must then decide whether the increased risk is a substantial factor contributing to the injuries sustained.

*Mitzelfelt v. Kamrin,* 526 Pa. 54, 63, n. 1, 584 A.2d 888, 892, n. 1 (1990) (citation omitted).

In light of the current state of the law in this area, it is clear that the trial court's charge was not erroneous. The portion of the charge complained of explained what is and is not a substantial factor. The answer to the verdict interrogatories establishes that the jury found an increased risk brought about by Dr. Sabeh's conduct. Nonetheless, the jury was still required to determine whether such an increased risk was a substantial factor in Mrs. Clayton's death. *Bashline, supra.* Thus, the instruction explaining how the jury was to reach this determination was proper. The trial court's apt analogy is directly on point:

> Best understood as distinct determinations working together toward a single conclusion, the elements of proof envisioned by *Hamil,* and discussed in the charge of this Court, are in no way contradictory. One measure exists to define the *standard of causation* as a "burden of proof" while the second defines the *quality of evidence* required to meet it as a "burden of production." Like little more than a description in a cookbook, the first part

tells what it is and how to make it, while the second lists the ingredients.

(Trial court opinion at 6, emphasis in original.) The Honorable Livingstone M. Johnson correctly noted that, "the charge at issue reflected the holding of *Hamil* in relaxing the Plaintiff's burden to produce evidence of medical certainty, while at the same time assuring the requisites of causation were still observed." *Id.*, at 7.

The charge at issue was especially appropriate in light of the evidence presented by Dr. Sabeh. That expert testimony stated that Mrs. Clayton's death would have occurred despite any testing ordered by Dr. Sabeh. Thus, Dr. Sabeh presented a defense to the increased risk theory specifically contemplated in *Hamil*. "[D]efendant's failure to provide adequate treatment to [patient-plaintiff] was a *substantial factor* in bringing about his demise and thus defendant is liable *unless* it can be shown that death would have resulted regardless of the action or inaction of defendant." *Hamil, supra,* 481 Pa. at 268, 392 A.2d at 1286 (some emphasis added). Thus the evidence clearly put at issue whether the increased risk brought about by Dr. Sabeh's failure to test was a substantial factor in causing Mrs. Clayton's death. As noted above, a trial court has a duty to charge a jury on all relevant issues. Thus, it was not error for the trial court to deliver the instruction defining how the jury was to determine whether Dr. Sabeh's omission was a substantial factor in causing Mrs. Clayton's death.

Judgment affirmed.