**Melley v. Penater**

*Stephen Shields, Edward Shaughnessy* and *Gus Milides,* for plaintiff.
*Edward McCardle,* for defendants.

FRANCIOSA, *S.J.,* September 4, 1992—

## OPINION OF THE COURT

Following an eight-day trial in this medical malpractice case, a jury returned findings that neither the physician nor the hospital were negligent in the performance of their duties. In accord with these findings, the trial court entered verdicts in favor of both defendants.

Plaintiff thereafter filed a timely motion for a new trial. In response to such post-verdict motion, defendants re-

quested a final judgment for the physician on the grounds that plaintiff's motion sought relief solely against the hospital. Initially, this request was denied.[1] When the case attached for oral argument, the request for a judgment in favor of the physician was renewed together with a motion to dismiss as to both defendants based on plaintiff's failure to comply with this court's briefing schedule. As part of the record made at the oral argument, which was held on June 12, 1992, the motion for a final judgment in favor of the defendant physician, Frank H. Penater, was granted without objection from the plaintiff. However, defendants' motion to dismiss was denied with regard to the hospital.

Only one issue is raised in the motion as presently pending against the hospital. Plaintiff argues that the trial court erred in its instruction to the jury on the standard of care to be used in judging the conduct of nurses employed by the hospital. The objection to the charge is made even narrower in its scope because it is directed solely at the trial court's adoption of the locality rule for inclusion in its instructions as to the standard of care for non-physician health-care providers. Even though the narrow issue before this court does not require an extensive review of the evidence, a brief discussion of the facts is necessary in order to understand the unusual nature of the accident which was the basis for plaintiff's malpractice claim.

Viewing the relevant evidence in the light most favorable to defendant-hospital as verdict-winner, the facts are these:

---

1. See order of court entered on February 7, 1992.

On April 30, 1989, 75-year-old plaintiff Margaret Melley went to the emergency room at defendant Gnaden Huetten Memorial Hospital in Lehighton, Carbon County, with complaints of wheezing, chest tightness and shortness of breath. At the time, Melley was taking several prescribed drugs, including steroid-based "Prednisone."

The emergency room gave Melley "Solu-Medrol," another steroid-based drug, which provided some relief. She was eventually admitted and the admitting physician noted cardiac and respiratory problems and that she had a history of steroid-related psychosis, a condition which can cause delusions.

After admission, Melley was placed in a second floor room across from the nurses' station for frequent observation. She was fully aware of her surroundings and continued to receive the Solu-Medrol, Prednisone, and other medications. Her physician, defendant Frank Penater, M.D., was notified.

Between April 30, 1989, and May 1, 1989, a written nursing care plan for Melley was prepared and stored in a cardex at the nurses' station. It emphasized that the nursing staff should assess and note changes in Melley's mental status daily; that Melley was a possible candidate for accidental self-injury; that the physician should be informed of same; and that a discussion with a physician regarding body restraints might be necessary.

During Melley's stay, progress notes were made by the nursing staff and kept at bedside. The intervals between note-taking varied from 30 to 60 minutes.

Melley's first day in the hospital, April 30, 1989, was uneventful. However, on May 1, 1989, at approximately

11 a.m., the nursing staff noted Melley giving inappropriate responses to questions and, at 3:30 p.m. engaging in "inappropriate behavior." An hour later, she was observed by a respiratory therapist to be agitated, very short of breath, and trying to get out of bed. This therapist warned the registered nurse on duty of Melley's condition. The next eight hours passed quietly and the four siderails on Melley's bed were raised while she rested.

On May 2, 1989, at 12:30 a.m., Melley informed the nursing staff she did not want her temperature taken any more. She became combative when touched and remained fully aware of her surroundings.

At 1 a.m., Melley refused to take a prescribed drug, stating that the hospital staff was trying to poison her. She attempted to grab the syringe from the hand of a nurse.

At 1:05 a.m., the nursing staff notified Doctor Penater about Melley's condition. He arrived at 1:10 a.m. Melley directed Penater not to order anymore medication. By 1:15 a.m., she was resting quietly again and the siderails remained up. She was fully oriented to her identity, location and time of day.

At 1:30 a.m., the nurses found Melley lying outside her window on the ground. She exited through the window's narrow, lower one-quarter section which opened downward into the room.

She was immediately taken to the emergency room for examination by Doctor Penater. Melley was wheezing and bearing several skin abrasions. She had definite pain in her mid-thoracic spine, left hip and right ankle. No head injuries were noted. Subsequent X-rays established the following injuries: fracture of the right ankle lateral

malleolus; comminuted fracture of the proximal left femur and, possibly, hip; and a compression fracture in her thoracic spine.

Melley received treatment for these injuries and was returned to the floor. Once in bed, she was further restrained by four leather straps and siderails. Her hip was placed in traction. Shortly thereafter, Doctor Penater and the hospital staff began tapering off Melley's steroid-based Solu-Medrol and Prednisone. Over the next several days, Melley periodically became disoriented and shouted to be released. On May 6, 1989, she was transferred in "fair condition" to Lehigh Valley Hospital Center in Allentown. On August 9, 1990, Melley died from an unrelated brain tumor.

At various stages of the trial, the defendant asked the court to impose upon the plaintiff the burden of proving that the specific accident was foreseeable to the doctor and nurses. According to the defense, the design of the window made the open space so small that no reasonably minded person could foresee that someone so largely built, as Margaret Melley was, would be able to pass through the available space. In light of evidence tending to show that Margaret Melley could have been acting under a delusion that three men were trying to get into her room to rape her, the trial court rejected the defense's argument that the plaintiff had to establish that defendants' conduct increased the risk of the specific harm suffered by Margaret Melley, namely, her jumping out of the small space left by an open swing-type window. Instead of submitting defendant's limited theory of liability, the trial court permitted the plaintiff to argue to the jury that if defendants' conduct increased the risk that Margaret Melley would become delusional and unable to protect herself from harm, then the plaintiff was entitled to recover for her injuries even if the exact way she would injure herself

was not foreseeable. Although plaintiff was given the opportunity to argue a much more expansive medical malpractice theory than the defendants thought applicable, the plaintiff did not prevail with the jury.

In seeking a new trial solely against the hospital, plaintiff now contends that the adoption of the locality rule could only have caused the jury confusion, and influenced the verdict, leading to an incorrect result. We disagree; and, we believe the following discussion of the pertinent parts of the record supports our conclusion that the instructions of the court[2] did not lead the jury into an erroneous result.

"A new trial will be granted where a charge is erroneous in a basic respect and it is impossible to determine the extent to which it was prejudicial." *Linde Enterprises Inc. v. Hazleton City Authority,* 412 Pa. Super. 67, 602 A.2d 897 (1992).

To evaluate claimed errors, "the jury charge must be considered in relation to the entire charge and in [ ] light of the evidence presented." *Barbosa v. Nunne-*

---

2. While it is true that the court approved defendant hospital's submitted points numbered 16, 18 and 22, the language of the actual charge differed from the submitted points. The actual charge went as follows:

"The applicable standard of care by which you are to measure a registered nurse's conduct is predicated upon the degree of care ordinarily exercised by other nurses in the locality or in similar localities at the time of the accident in question...." (Jury Charge N.T. 47).

"The applicable standard of care against which a licensed practical nurse's conduct should be measured is predicated upon the degree of care ordinarily exercised by other licensed practical nurses in the locality or in similar localities at the time of the accident in question...." (Jury Charge N.T. 49).

*macker*, 13 Carbon L.J. 176 (1992). (emphasis in original) *Clayton v. Sabeh,* 406 Pa. Super. 335, 594 A.2d 365 (1991). As long as the actual charge provides the jury with a reasonable guide for determining defendant's duty of care, then no error will be found. *Linde Enterprises Inc. v. Hazleton City Authority, supra.*

For nursing malpractice cases, Pennsylvania courts and juries look to "the degree of care ordinarily exercised by other nurses in the locality, or in similar localities: [51 A.L.R.2d *et seq.*]" to determine whether a particular nursing practice was substandard, thereby constituting negligence. *Koutsonjkas v. Riddle Memorial Hospital,* 53 D.&C.2d 390, 393 (1971). See *McAvenue v. Bryn Mawr Hospital,* 245 Pa. Super. 504, 369 A.2d 743 (1976); *Restatement of Torts (Second),* §299A.

During oral argument, plaintiff's counsel conceded that the locality rule remains the standard of care for nurses practicing in Pennsylvania. But, plaintiff suggests that this case should be the instrument for a change in existing law whereby nursing care would be measured by the broader national and statewide standards applicable to physicians. We believe it is the responsibility of a trial court to follow the existing case law and, therefore, we decline plaintiff's invitation and will leave any change in the law in the hands of our appellate courts.

Moreover, the plaintiff has no reason to complain about the "locality" used in this case. Plaintiff's experts were permitted to testify about the standard of care imposed upon nurses by statutes of this Commonwealth. In addition, plaintiff was given the widest latitude to elicit testimony concerning approved nursing practices both

statewide and nationwide. As clearly reflected by the record, none of the witnesses called by the plaintiff were required to limit their testimony to the general customs and practices within the locale of defendant Gnaden Huetten Hospital. The record just as clearly reflects that none of the defendants' experts testified to a lesser standard than statewide nursing practices. Although some mention may have been made to the way things were done at Gnaden Huetten Hospital, none of the defendants' experts gave opinions based on nursing practices of that or any other local hospital. Thus, on both sides of this case, the jury heard evidence only about national and statewide standards. Nothing in the defendants' closing arguments or in the court's instructions suggested a "locality" with standards lower than those followed statewide. In sum, nothing in the record viewed as a whole, lends support to plaintiff's assertion that jury confusion caused it to reach an incorrect result.

Wherefore, we enter the following

## ORDER OF COURT

And now, September 4, 1992, upon consideration of plaintiff's post-trial motion for a new trial against defendant Gnaden Huetten Memorial Hospital, and the briefs and oral argument of counsel, it is hereby ordered and decreed that plaintiff's motion for a new trial be and hereby is denied.

The prothonotary is directed to enter judgment in favor of defendant Gnaden Huetten Memorial Hospital and against plaintiff.