Judy **CORRIGAN**

v.

**METHODIST HOSPITAL, Sandord Davne, M.D. and Donald Myers, M.D.**

No. **CIV.A. 94–CV–1478.**

United States District Court, E.D. Pennsylvania.

Nov. 6, 2002.

Mark W. Tanner, Ominsky, Messa and Tanner, P.C., Philadelphia, PA, Giuliana F. Robertson, Ominsky Welsh & Steinberg, P.C., Philadelphia, PA, Annemarie Martin, Ominsky, Messa, Tanner, Giles And Sheridan, Philadelphia, PA, Thomas W. Sheridan, Attorney at Law, Philadelphia, PA, Andrew D. Swain, Joseph L. Messa, Jr., Messa & Associates, PC, Philadelphia, PA, for Plaintiff.

Nancy A. Nolan, Jonathan B. Sprague, Eileen M. Mohrfeld, Post & Schell, P.C., Philadelphia, PA, Kimberly Cummings, Office Of Counsel, Temple University Health System, Philadelphia, PA, Amalia V. Romanowicz, Philadelphia, PA, Kevin H. Wright, Wright, Young & McGilvery, Blue Bell, PA, Christopher Thomson, McKissock & Hoffman PC, West Chester, PA, Daniel F. Ryan, III, Christine A. Egan, Paul E. Peel, O'Brien & Ryan, Plymouth Meeting, PA, for Defendants.

### *MEMORANDUM AND ORDER*

JOYNER, District Judge.

This medical malpractice action is now before this Court for disposition of the post-trial motions of Defendants Sanford Davne, M.D. and Donald Myers, M.D. to alter/amend the judgment and for a new trial. For the reasons which follow, the motion to amend shall be granted but the motion for new trial is denied.

### *History of the Case*

Plaintiff, Judy Corrigan, brought this suit against Drs. Davne and Myers on March 4, 1994 for their alleged negligence in implanting pedicle screws and rods during spinal surgery which they performed on her on March 5, 1992. Plaintiff also alleged that the defendant doctors failed to obtain her informed consent to the procedures which they performed on that date and that they were further negligent in failing to diagnose a tumor (meningioma) on her thoracic spine, which had to be removed at a later time.[1]

Following a two-week trial, the jury returned a verdict in favor of the plaintiff and against the defendant doctors in the amount of $400,000. Liability was apportioned at 60% to Dr. Davne and 40% to Dr. Myers. Defendants thereafter moved to

---

1. Judgment as a matter of law was entered in favor of another defendant, Methodist Hospital, at the outset of the trial on April 5, 1999 and the informed consent claim against Dr. Myers was stricken during the course of the trial. Accordingly, the jury considered the plaintiff's informed consent claim only with regard to Dr. Davne.

alter and/or amend the judgment and for a new trial.[2]

### Standards for New Trial and to Alter Judgment

 It is well-settled that the ordering of a new trial is a matter committed to the sound discretion of the district court. *Bonjorno v. Kaiser Aluminum and Chemical Corp.*, 752 F.2d 802, 812 (3d Cir.1984), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986). Indeed, Fed. R.Civ.P. 59(a) states in relevant part:

(a) **Grounds.** A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...

A court may grant a new trial if doing so is required to prevent injustice or to correct a verdict that was against the weight of the evidence. *Ballarini v. Clark Equipment Co.*, 841 F.Supp. 662, 664 (E.D.Pa. 1993), *aff'd*, 96 F.3d 1431 (3d Cir.1996). A court may also grant a new trial if the verdict was the result of erroneous jury instructions, was excessive or clearly unsupported by the evidence or was influenced by extraneous matters such as passion, prejudice, sympathy or speculation. *Lightning Lube v. Witco Corp.*, 802 F.Supp. 1180, 1186 (D.N.J.1992), *aff'd*, 4 F.3d 1153 (3d Cir.1993).

 A new trial, however, cannot be granted merely because the court would have weighed the evidence differently or reached a different verdict. *Markovich v. Bell Helicopter Textron, Inc.*, 805 F.Supp. 1231, 1235 (E.D.Pa.1992), *aff'd*, 977 F.2d 568 (3d Cir.1992). *See Also: Olefins Trading, Inc. v. Han Yang Chemical Corp.*, 9 F.3d 282, 289 (3d Cir.1993); *Sandrow v. United States*, 832 F.Supp. 918 (E.D.Pa. 1993). Previous courts have warned that a court must refrain from interfering with the jury's verdict unless it is clear that the jury has reached a seriously erroneous result. *Lillis v. Lehigh Valley Hospital, Inc.*, 1999 U.S. Dist. LEXIS 13933, *11, 1999 WL 718231, at *4 (E.D.Pa.1999). Thus, a new trial may be granted only where a miscarriage of justice would result if the verdict were to stand. *Id.*, citing *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir.1991). Absent a showing of substantial injustice or prejudicial error, a new trial is not warranted and it is the court's duty to respect a plausible jury verdict. *Montgomery County v. Microvote Corp.*, Civ. No. 97–6331, 152 F.Supp.2d 784 at 794–95, 2001 U.S. Dist. LEXIS 8727 at *26 (E.D.Pa. June 25, 2001), citing *Goodwin v. Seven–Up Bottling Co. of Philadelphia*, No. 96–2301, 1998 WL 438488 at *3 (E.D.Pa. July 31, 1998).

 On the other hand, motions to alter and/or amend judgment are generally made pursuant to Fed.R.Civ.P. 59(e) and must rely on one of three major grounds: (1) an intervening change in controlling law, (2) the availability of new evidence not available previously, or (3) the need to correct clear error of law or prevent manifest injustice. *North River Insurance Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995). Indeed, a Rule 59(e) motion is not designed to permit a party to raise new issues previously available but not raised prior to entry of judgment..., nor are Rule 59(e) motions designed to

---

**2.** It should be noted that the rather lengthy delays in bringing this case to a final conclusion were occasioned first by its having been assumed into the Bone–Screw Multi–District Litigation overseen by Judge Bechtle (June, 1996—May, 1998) and by the parties' ongoing endeavor to amicably resolve the matter post-verdict (September, 1999—February, 2002).

allow a party to present additional evidence as a basis for relief. *Falkenberg Capital Corp. v. Dakota Cellular, Inc.*, 925 F.Supp. 231, 243 (D.Del.1996), citing, *inter alia, Kiewit E. Co. v. L & R Construction Co.*, 44 F.3d 1194, 1204 (3d Cir.1995) and *United States v. Accounts Nos. 3034504504 and 144–07143*, 971 F.2d 974, 987 (3d Cir. 1992).

## *Discussion*

**A. Admission of Nurse** Patterson's expert testimony.

Defendants first object to the Court's admission of the expert testimony of Terri S. Patterson, R.N., M.S.N., C.R.R.N. Specifically, they contend that Nurse Patterson's testimony concerned Plaintiff's future medical treatment and therefore involved a "medical diagnosis," which is outside the expertise of a professional nurse.

█ Fed.R.Evid. 702 outlines the parameters under which expert testimony may be admitted in the district courts. Pursuant to that rule,

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

There are thus three intertwined bases for excluding testimony under Rule 702:(1) if the testimony will not assist the trier of fact; (2) if scientific evidence is not sufficiently reliable; and (3) if the particular expert does not have sufficient specialized knowledge to assist the jurors. *Petruzzi's*

*IGA Supermarkets, Inc. v. Darling–Delaware, Inc.*, 998 F.2d 1224, 1238 (3d Cir. 1993). If expert testimony is overly confusing or more prejudicial than probative, then it also can be excluded under Rule 702. *Id.* The determination of the competency of an expert witness rests with the broad discretion of the district court, whose action is to be sustained unless manifestly erroneous. *Aloe Coal Co. v. Clark Equipment Co.*, 816 F.2d 110, 114 (3d Cir.1987), citing, *inter alia, Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962) and *Caisson Corp. v. Ingersoll–Rand Co.*, 622 F.2d 672, 682 (3d Cir.1980). As a general rule, federal courts have maintained a liberal policy of admitting expert testimony because once the court decides that the expert's testimony would be helpful to the jury, the jury is entitled to evaluate the testimony. *Montgomery County v. Microvote Corporation*, 152 F.Supp.2d 784, 798 (E.D.Pa.2001).

Under the Professional Nursing Law, 63 P.S. § 211, *et. seq.*, the "practice of professional nursing"

means diagnosing and treating human responses to actual or potential health problems through such services as case-finding, health teaching, health counseling, and provision of care supportive to or restorative of life and well-being, and executing medical regimens as prescribed by a licensed physician or dentist. The foregoing shall not be deemed to include acts of medical diagnosis or prescription of medical therapeutic or corrective measures, except as may be authorized by rules and regulations jointly promulgated by the State Board of Medicine and the Board, which rules and regulations shall be implemented by the Board.

63 P.S. § 212(1).[3] A medical diagnosis is commonly understood to be an identification of a disease based on its signs and symptoms. *Flanagan v. Labe*, 547 Pa. 254, 690 A.2d 183, 186 (1997).

■ In this case, the defendants take exception to Nurse Patterson's testimony that the spasms in Ms. Corrigan's lower extremities put her at increased risk for injury and that she is at significant risk for skin breakdown should her immobility increase, as well as her testimony concerning the plaintiff's future needs for physical and aquatic therapy, occupational therapy, pain medications and orthotics to facilitate body function. Nurse Patterson, however, holds both a bachelor's and a master of science degree in nursing and is specially certified in rehabilitation nursing and nursing administration. She has more than twenty years of experience in the nursing field and we therefore found that she had the requisite expertise and knowledge to testify as an expert witness. Moreover, we also find Ms. Patterson's testimony to be well within her ken as a rehabilitation expert/consultant who was charged with the development of a life care plan for the plaintiff. We cannot find that she diagnosed or otherwise identified a disease afflicting the plaintiff from her symptoms; it rather appears that she reviewed Ms. Corrigan's medical and treatment history and testified concerning what types of treatment Ms. Corrigan could expect to receive from her doctors in the future. Given that we find this to have been the appropriate subject of Nurse Patterson's expert testimony, we deny the defendants' motion for new trial on this issue.

## B. Jury Charge on the Increased Risk of Harm.

Defendants next aver that the Court committed reversible error by incorrectly instructing the jury that, if they determined that the defendants' conduct increased the risk that plaintiff would suffer harm and found that such harm did occur, then plaintiff had met her burden of proving legal causation.

■ It is well-established that error in a jury charge is sufficient ground for a new trial if the charge, taken as a whole, is inadequate, unclear, or has the tendency to confuse or mislead rather than to clarify a material issue. *Von der Heide v. Commonwealth of Pennsylvania, Department of Transportation*, 553 Pa. 120, 718 A.2d 286, 288 (1998). A charge will be found adequate unless "the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error." *Id.*, quoting *Stewart v. Motts*, 539 Pa. 596, 606, 654 A.2d 535, 540 (1995). Finally, to constitute reversible error, a ruling on a jury instruction must not only be erroneous but it must also be harmful or prejudicial to the complaining party." *Schultz by Schultz v. DeVaux*, 715 A.2d 479, 482 (Pa.Super.1998), citing *Johnson v. Hyundai*, 698 A.2d 631, 637 (Pa.Super.1997). *See Also: Ottavio v. Fibreboard Corp.*, 421 Pa.Super. 284, 617 A.2d 1296, 1301–02 (1992).

**3.** In addition, "diagnosing" is defined as "...that identification of and discrimination between physical and psychosocial signs and symptoms essential to effective execution and management of the nursing regimen," "treating" "means selection and performance of those therapeutic measures essential to the effective execution and management of the nursing regimen." 63 P.S. §§ 212(4), (5). Finally, "human responses" are "...those signs, symptoms and processes which denote the individual's interaction with an actual or potential health problem." 63 P.S. § 212(6).

■ In this case, Defendant Myers alleges that the Court committed prejudicial error when it charged the jury that:

[a] causal connection between the injuries suffered and the defendant's failure to exercise reasonable care may be proved by evidence that the risk of incurring those injuries was increased by the defendant's negligent conduct. . . .

I further instruct you, members of the jury, that the plaintiff can recover if she can demonstrate by the preponderance of the evidence that the negligence of the defendant increased the risk of a permanent injury.

■ In context, however, the Court's charge provided:

Members of the jury, the defendant physician is legally responsible or liable for the injuries suffered by his patient if the defendant's negligent conduct is a legal cause of those injuries. In order for negligent conduct to be a legal or proximate cause, that conduct must have been a substantial factor in bringing about the injuries in question.

If the injuries in question would have been sustained even if the physician had not been negligent, then the negligent conduct of the defendant physician would not be a substantial factor in causing the injuries in question. Stated differently, the negligent conduct would not be a substantial factor in causing this patient injuriy if those injuries would not have been sustained had the physician not acted in a negligent manner.

Members of the jury, when a defendant physician negligently fails to act or negligently delays in employing indicated diagnostic or therapeutic measures and his negligence is a substantial contributing factor in causing injuries to his patient, the plaintiff does not have to prove to a certainty that proper care would have, as a medical fact, prevented the injuries in question. If a defendant physician's negligent action or inaction has effectively terminated his patient's chances of avoiding injury, he may not raise conjecture as to the measures of the chances that he has put beyond the possibility of realization. If there was any substantial possibility of avoiding injuries, and the defendant has destroyed that possibility, they are liable to the plaintiff. A causal connection between the injuries suffered and the defendant's failure to exercise reasonable care may be proved by evidence that the risk of incurring those injuries was increased by the defendant's negligent conduct. Members of the jury, the law recognizes that it is rarely possible to demonstrate to an absolute certainty what would have happened in circumstances that the wrongdoer did not allow to come to pass.

This charge virtually mirrored that of Pennsylvania Suggested Standard Jury Instruction 10.03B (Civ), which has been held to appropriately summarize the law in Pennsylvania that "[o]nce a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk of harm to a person in the plaintiff's position, and that the harm was in fact sustained, it becomes a question for the jury as to whether or not that increased risk was a substantial factor in producing the harm." *Mitzelfelt v. Kamrin*, 526 Pa. 54, 64, 584 A.2d 888, 892 (1990), quoting *Hamil v. Bashline*, 481 Pa. 256, 269, 392 A.2d 1280, 1286 (1978). To be sure, the increased risk of harm line of cases *allow* a jury to find that the conduct which gave rise to an increased risk was the legal cause of a plaintiff-patient's injuries, but *they do not require the jury to do so.* *Clayton v. Sabeh*, 406 Pa.Super. 335, 594 A.2d 365, 367 (1991) (emphasis in original).

Thus, once a plaintiff has established conduct giving rise to an increased risk of harm, "such evidence furnishes a basis for the fact-finder to go further and find that such increased risk was in turn a substantial factor in bringing about the resultant harm; the necessary proximate cause will have been made out if the jury sees fit to find cause in fact." *Id.*, citing *Hamil*, 481 Pa. at 272, 392 A.2d at 1288.

▉ In reviewing the charge in the case at bar, we find no error in the charge as a whole or in the court's further instruction "that the plaintiff can recover if she can demonstrate...that the negligence of the defendant increased the risk of a permanent injury." WEBSTER'S II NEW RIVERSIDE DICTIONARY (1994) defines "can" as: "1. Used to indicate: (a) mental or physical ability; (b) possession of a given power; (c) Possession of a given skill or capacity. 2. Used to indicate possibility or probability. 3. Used to request or grant permission." We therefore find that this portion of the instruction also *allowed* but did not *compel* the jury to conclude that the defendants' conduct in failing to diagnose and remove the thoracic tumor increased the risk that the plaintiff would suffer the harm which she did and to find that this increased risk was a substantial factor in causing Ms. Corrigan's damages. In the absence of error, we deny the motion for post-trial relief on this ground as well.

**C. Improper Admission of Evidence.**

For his part, Dr. Davne also submits that the Court erred in refusing to grant a mistrial when Plaintiff's counsel defied prior court orders by improperly questioning him regarding the value of his stock options and employing both a 2' X 3' blow-up of Dr. Salkind's records and a chart entitled "NON INDICATIONS FOR SURGERY." Dr. Davne also challenges the admission of evidence of his financial relationship with Acromed and the submission of evidence of lost wages.

It is well-settled that when evaluating a motion for a new trial on the basis of trial error, the Court "must first determine whether an error was made in the course of trial and then must determine whether that error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice." *Montgomery County v. Microvote*, 152 F.Supp.2d at 796, quoting *Farra v. Stanley–Bostitch*, 838 F.Supp. 1021, 1026 (E.D.Pa.1993), *aff'd*, 31 F.3d 1171 (3d Cir.1994).

▉ However, even if the Court erred in its rulings at trial, a new trial will not be ordered where the errors constitute harmless error and trial errors are considered harmless when it is highly probable that the error did not affect the outcome of the case. *Banks v. Millar Elevator Servs. Co.*, No. 98–997, 2000 WL 274005 at *1 (E.D.Pa. March 10, 2000), citing *Barker v. Deere & Co.*, 60 F.3d 158, 164 (3d Cir.1995) and *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 53 (3d Cir.1989). Unless a substantial right of the party is affected, a non-constitutional error in a civil case is harmless. *Id.*, citing *Linkstrom v. Golden T. Farms*, 883 F.2d 269 (3d Cir.1989). Under Fed.R.Civ.P. 61, harmless error is defined:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not

affect the substantial rights of the parties.

It should be noted that the burden of proving harmful error rests on the party moving for a new trial. *Ryther v. KARE 11,* 864 F.Supp. 1510, 1521 (D.Minn.1994), *aff'd,* 84 F.3d 1074 (8th Cir.1996), *rehearing granted, opinion vacated on other grounds,* 108 F.3d 832 (8th Cir.1997), *cert. denied,* 521 U.S. 1119, 117 S.Ct. 2510, 138 L.Ed.2d 1013 (1997).

■ In this case, while the defendant asserts that his motions for mistrial on the basis of the improper comments and actions of Plaintiff's counsel should have been granted, he does not make any showing that the admission of this evidence in any way influenced the outcome of the trial. We thus cannot find that any of the defendant's substantial rights were affected or that a refusal to grant a new trial would be inconsistent with substantial justice. Accordingly, defendant has failed to meet his burden of proving that the admission of this evidence was not harmless and his motion for new trial on this basis must also be denied.

Similarly, Defendant Davne contends that the plaintiff should not have been permitted to raise evidence of his financial relationship with Acromed, the manufacturer of the pedicle instrumentation used in the March 5, 1992 surgery as it was barred by Judge Bechtle's Pre–Trial Order No. 117 approving the settlement agreement for the class (of which plaintiff was a part). Specifically, Defendant relies upon the following language of Order No. 117:

> All settlement class members...are permanently BARRED and ENJOINED from initiating, asserting, or prosecuting any actions presenting Settled Claims against any party. Settlement Class Members...may not initiate, assert, or prosecute Orthopedic Bone Screw relat-

ed claims, unless:...(b) the claim does not (i) rest in whole or in part on any product liability-related theory of recovery, including without limitation...the regulatory status of any AcroMed Orthopedic Bone Screw, or alleged failure to warn, nondisclosure, or inaccurate or incomplete disclosure, of the regulatory status of any AcroMed Orthopedic Bone Screw or (ii) have as an element of the claim financial relationships with AcroMed and/or an alleged conflict of interest based upon any such financial relationship (impeachment shall not be considered an element of a claim).

Thus, defendant argues, any claim based upon the financial relationship between himself and AcroMed has been released and Plaintiff was barred from pursuing such a claim.

■ We do not disagree with Defendant's argument that the plaintiff was barred from pursuing a claim against him based upon his financial relationship with AcroMed. However, we fail to see how Ms. Corrigan's elicitation of evidence of the financial relationship between Dr. Davne and Acromed equated to pursuit of an action against him on this basis. Rather, it appears that the evidence was elicited for the purpose of showing that Dr. Davne's decision to utilize Acromed's pedicle screw instrumentation in Plaintiff's surgery may have been influenced by this financial connection and thus may have caused him to deviate from the duty of due care which he owed to his patient. While this evidence may have proven prejudicial to the defendant's case, it was nevertheless probative and we do not find that its prejudicial value outweighed its probative value such that it would have been appropriately excluded under Fed.R.Evid. 403. Accordingly, the defendant's motion for new trial on this ground is likewise denied.

Finally, Dr. Davne challenges the admission of the testimony of Royal Bunin in support of Plaintiff's claim for lost wages on the grounds that Plaintiff did not establish that she would have been gainfully employed notwithstanding the 1992 surgery. Stated otherwise, Defendant Davne contends that Plaintiff was unable to establish that "but for" the 1992 surgery, she would have been gainfully employed.

 In establishing a cause of action in negligence, plaintiffs bear the burden of demonstrating that there was a duty or obligation recognized by law, breach of that duty by the defendants, a causal connection between the defendants' breach of that duty and the resulting injury, and actual loss or damage suffered by the complainants. *Summers v. Giant Food Stores, Inc.*, 743 A.2d 498, 509 (Pa.Super.1999), citing *Reilly v. Tiergarten, Inc.*, 430 Pa.Super. 10, 633 A.2d 208, 210 (1993). *See Also: Ellis v. Sherman*, 512 Pa. 14, 18, 515 A.2d 1327, 1328 (1986); *Waddell v. Bowers*, 415 Pa.Super. 469, 609 A.2d 847, 849 (1992), *appeal denied*, 533 Pa. 613, 618 A.2d 402 (1992). While the Pennsylvania Supreme Court has had difficulty defining exactly what constitutes the nexus between wrongful acts or omissions, i.e., causation, it is beyond dispute that in Pennsylvania causation involves two separate and distinct concepts-cause in fact and legal or proximate cause. *Id.* Cause in fact or 'but for' causation provides that if the harmful result would not have come about but for the negligent conduct then there is a direct causal connection between the negligence and the injury. Legal or proximate causation involves a determination that the nexus between the wrongful acts or omissions and the injury sustained is of such a nature that it is socially and economically desirable to hold the wrongdoer liable. *First v. Zem Zem Temple*, 454 Pa.Super. 548, 686

A.2d 18, 21 (1996), citing *E.J. Stewart, Inc. v. Aitken Products, Inc.*, 607 F.Supp. 883, 889 (E.D.Pa.1985). Thus, to recover damages in a negligence action, a plaintiff must establish that a particular defendant's negligence was the proximate cause of his or her injuries. *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 654 (Pa.Super.2002). The test for proximate causation is whether the appellees' acts or omissions were a "substantial factor" in bringing about appellant's harm. *First, supra.*

 Section 433 of the Restatement of Torts, Second (1965) sets forth a method of determining whether negligent conduct is a substantial factor in producing injury. It provides:

**§ 433. Considerations Important in Determining Whether Negligent Conduct is Substantial Factor in Producing Harm**

> The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another:
>> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
>> (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;
>> (c) lapse of time.

*Vattimo v. Lower Bucks Hospital*, 502 Pa. 241, 465 A.2d 1231 (1983). Ordinarily, the determination of whether the defendant's conduct was a substantial cause of the injuries complained of should not be taken

from the jury if the jury may reasonably differ as to whether the conduct of the defendant has been a substantial factor in causing the harm. *Id.*, citing *Ford v. Jeffries*, 474 Pa. 588, 594, 379 A.2d 111, 114 (1977); *Gutteridge*, 804 A.2d at 654.

■■■ In this case, the plaintiff produced testimony from both Dr. Albert Butler and Dr. John Esterhai that she was disabled from gainful employment. Dr. Butler further testified that the 1992 surgery diminished Ms. Corrigan's chances of ever returning to work. This evidence was, we find, sufficient to raise a jury question as to whether the defendant doctors' negligence was a substantial factor in causing Ms. Corrigan to suffer damages, including lost wages. Accordingly, we discern no error in allowing this testimony and in permitting the jury to consider the plaintiff's claim for lost wages. Defendant's motion for post-trial relief on this basis is therefore denied.

### D. Defendants' Motion to Alter and/or Mold the Verdict to Offset Amounts Paid by Plaintiff's Worker's Compensation Insurer.

Defendants next assert that pursuant to the statutory provisions governing the Pennsylvania Property and Casualty Insurance Guaranty Association, they are entitled to an offset for the amounts paid on Plaintiff's behalf by the Travelers Insurance Company, the worker's compensation carrier covering her employer. Defendants invoke this provision because their primary malpractice insurance company, Physicians Insurance Co., Inc. ("PIC") was declared insolvent and ordered into liquidation by the Pennsylvania Commonwealth Court in January, 1998.

■■■ Under the Pennsylvania Property and Casualty Insurance Guaranty Association Act, 40 P.S. § 991.1801, *et. seq.*, the Pennsylvania Legislature has outlined a scheme for providing some relief for claimants in the event of an insurance company's insolvency.[4] The Act does not intend to place a claimant in all cases in the same position she would have been in had the insurance company remained solvent; rather, it creates a means by which limited recovery may be had in instances where none would have been possible due to the insolvency. *Fetters v. Pennsylvania Property and Casualty Insurance Guaranty Association*, 804 A.2d 126, 127 (Pa.Cmwlth.Ct.2002), quoting *Schreffler v. Pennsylvania Insurance Guaranty Association*, 402 Pa.Super. 309, 586 A.2d 983, 985 (1991). In accordance with that scheme, a claimant may not recover more benefits to which he or she would otherwise be entitled. Indeed, 40 P.S. § 991.1817 provides:

### § 991.1817. Non-duplication of recovery

(a) Any person having a claim under an insurance policy shall be required to exhaust first his right under such policy. For purposes of this section, a claim under an insurance policy shall include a claim under any kind of insurance, whether it is a first-party or third-party claim, and shall include, without limitation, accident and health insurance, worker's compensation, Blue Cross and Blue Shield and all other coverages except for policies of an insolvent insurer. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under other insurance.

---

4. It has been said that Section 991.1817 aims to lessen the financial burden on the insurance industry, vis-a-vis PPCIGA, by compelling a claimant to recover first from their insurers "which are contractually bound to pay a claim." *Price v. Pennsylvania Property, Casualty Insurance Guaranty Association*, 795 A.2d 407, 410 (Pa.Super.Mar.19, 2002).

(b) Any person having a claim which may be recovered under more than one insurance guaranty association or its equivalent shall exhaust first his right of recovery from the association of the place of residence of the insured. Any amount payable on a covered claim under this act shall be reduced by the amount of recovery from any other insurance guaranty association or its equivalent.

It is thus clear that where a claimant has received insurance benefits under worker's compensation, the Court may properly mold the verdict by applying this offset provision. *See, e.g., Panea v. Isdaner,* 773 A.2d 782, 795 (Pa.Super.Apr.10, 2001).

 In this case, the defendants submit and the plaintiff does not contest that she received some $276,897.25 in worker's compensation benefits from the Travelers Insurance Company. In view of the foregoing provision, we therefore must alter the verdict in this matter to offset the amount paid by Travelers such that Ms. Corrigan is now entitled to collect the sum of $123,102.75, $73,861.65 (or 60%) from Dr. Davne and $49,241.10 (or 40%) from Dr. Myers.

For all of the above-stated reasons, the defendants' motions to alter/amend the judgment and/or for new trial are granted in part and denied in part pursuant to the attached order.

### ORDER

AND NOW, this 6th day of November, 2002, upon consideration of Defendants' Motions to Alter/Amend the Judgment and/or for New Trial, it is hereby ORDERED that the Motions to Amend the Judgment are GRANTED, the Motions for New Trial are DENIED, and the Verdict entered in this matter on April 22, 1999 is MOLDED to reflect an offset for worker's compensation benefits previously received in the amount of $276,897.25, such that the total verdict is accordingly reduced to $123,102.75.