**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LARRY TRUJILLO, | No. 16-56064 |
| Plaintiff-Appellant, | |
| v. | D.C. No. 2:14-cv-05431-PSG-MRW |
| COUNTY OF LOS ANGELES, a public entity; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted December 8, 2017
Pasadena, California

Before: WARDLAW and GOULD, Circuit Judges, and GONZALEZ ROGERS,[**] District Judge.

We consider the scope of rights of a quadriplegic suspect who was arrested

and then detained in Los Angeles County facilities before being convicted of

crime. A motion by county defendants for summary judgment was granted by the

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Yvonne Gonzalez Rogers, United States District Judge for the Northern District of California, sitting by designation.

district court. We assess: (1) whether certain affidavits of Defendants' expert witness doctor and of fact witnesses who were engaged in detention responsibilities were properly admitted in support of summary judgment, and (2) whether affidavits submitted by experts for Plaintiff Larry Trujillo should have been considered in opposition to the summary judgment motion. Because we conclude that the district court correctly ruled that Defendants' evidence was admissible, we affirm that part of the district court's decision. But because the district court never ruled on whether there were valid evidentiary objections to Trujillo's proffered expert opinions, and specifically whether Trujillo's experts were qualified to express opinions, and because we conclude that the district court's reasoning excluding those declarations pursuant to Rule 56(c)(3) was not correct, we vacate in part the district court's decision in so far as it relates to Trujillo's evidence. We remand for further proceedings in which the district court should rule on the evidentiary objections to Trujillo's expert testimony and then determine if fact issues preclude summary judgment on the claims presented.

As a result of a gunshot wound to his neck, Trujillo is quadriplegic. Trujillo was housed as a pretrial detainee in the Twin Towers Correctional Facility's Correctional Treatment Center (CTC) because of his special medical condition. While housed in CTC, Trujillo complained of inadequate physical therapy, lack of mental stimulation, inadequate medical care resulting in bedsores and muscle

2

contractures, and lack of access to his wheelchair in violation of his Fourteenth Amendment rights not to suffer cruel and unusual punishment and to receive adequate medical care. Trujillo also pursued claims for violation of the Americans with Disabilities Act (ADA), violation of the Rehabilitation Act, medical negligence, dependent adult abuse, and intentional infliction of emotional distress. Defendants moved for summary judgment, and Trujillo opposed the motion and filed objections to Defendants' experts' testimony. The district court overruled Trujillo's evidentiary objections and granted summary judgment to Defendants. We review a grant of summary judgment *de novo*, *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013), and review for abuse of discretion a district court's evidentiary rulings, *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1474 (9th Cir. 1992). We affirm in part, vacate in part, and remand.

1. First, we consider whether the district court abused its discretion in admitting the declarations of Dr. Dobkin, Dr. Teophilov, and Lieutenant Petrocelli. Trujillo argues that Dr. Dobkin's declaration was inadmissible because Dr. Dobkin did not have personal knowledge of Trujillo's medical conditions and because the medical records he relied on were not attached to the declaration. Expert witnesses may offer opinions on matters of which they do not have firsthand knowledge so long as it is permissible in their discipline. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993). Medical experts regularly rely on a person's

treatment records to form their opinions, and Dr. Dobkin saw Trujillo in person. The district court did not abuse its discretion by admitting Dr. Dobkin's declaration.

Trujillo further argues that the district court should have precluded Dr. Teophilov and Lt. Petrocelli's declarations because Defendants did not list them in their initial or supplemental disclosures. Although the district court could have precluded the use of the witnesses' testimony when the witnesses were not appropriately disclosed, Fed. R. Civ. P. 37(c), it need only do so when the error is harmful. *Id.* The district court concluded that Trujillo had not been harmed, and that Trujillo could have sought an extension to depose Dr. Teophilov and Lt. Petrocelli once they were disclosed. Indeed, on appeal Trujillo still has not alleged a harm. We hold that the district court did not abuse its discretion by admitting the declarations. Defendants' evidence on summary judgment should have been considered and was considered, so we reject Trujillo's challenge to that evidence.

2. Second, we consider whether the district court erred by granting summary judgment for Defendants on Trujillo's medical negligence and dependent adult abuse claims. As an initial matter we address Defendants' argument that the district court properly considered undisputed their Statement of Facts because Trujillo did not specifically cite evidence in the record that created genuine disputes of material fact. We reject this argument because we disagree with its

premise. Federal Rule of Civil Procedure 56(c)(3) surely provides that "[t]he court need consider only the cited materials, but it may consider other materials in the record." Here we do not understand any valid basis for the district court to have concluded that Trujillo did not cite to the material in the Nurse Jacqueline Moore and Nurse Practitioner Roxanne Wilson declarations. Trujillo did cite with particularity to the declarations of Nurse Moore and of NP Wilson, noting where the declarations were in the evidentiary record. Both these declarations were short, six and nine pages respectively, and were pertinent throughout to contradict the claim of Dr. Bruce Dobkin that the standard of care was always followed. Rule 56(c)(3) does not require more than Trujillo did in his citations to the Moore and Wilson declarations. Rule 1 of the Federal Rules of Civil Procedure provides a standard for reviewing any of its rules that may be ambiguous. It provides:

> These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.

Fed. R. Civ. P. 1.

It might arguably be speedier and less expensive to resolve this case without considering fact disputes raised by those declarations, but it could not be "just" to do so without even a determination on the admissibility of their opinions. We conclude that on *de novo* review of the summary judgment motion, it would be a

5

miscarriage of justice to not consider Nurse Moore's and NP Wilson's declarations and the other generally cited evidence in the record when determining whether there are any genuine disputes of material facts. *See Asarco LLC v. Atl. Richfield Co.*, 866 F.3d 1108, 1122 (9th Cir. 2017).

When considering a state-law claim for medical malpractice, we apply the competency rules of the state in which the incident occurred. *See Liebsack v. United States*, 731 F.3d 850, 856–58 (9th Cir. 2013). The standard of care in a California medical malpractice case must be shown by expert testimony. *Lattimore v. Dickey*, 239 Cal. App. 4th 959, 968 (2015) ("[W]here a medical specialist is alleged to have acted negligently, the 'specialist must possess and use the learning, care and skill normally possessed and exercised by practitioners of that specialty under the same or similar circumstances.'" (citation omitted)). The rule set forth by *Lattimore* in California is that a nurse may testify to the standard of care for a nurse, and a doctor may testify as to the standard of care for a doctor. But a doctor cannot testify to the duties of a nurse and a nurse cannot testify to the duties of a doctor absent some "certification, expertise or relevant knowledge" of the applicable standard of care. *See id.* at 970 (concluding a doctor could not testify to the standard of care of the nursing staff at the hospital in a medical negligence case).

6

Here, so far as the California standard of care claims are concerned, that rule has the effect of precluding NP Wilson and Nurse Moore, Trujillo's experts, from testifying to the standard of care for Dr. Julian Wallace and Dr. Nina Zasorin absent some special certification, expertise, or relevant knowledge. *Id.* It also means that Dr. Dobkin, Defendants' expert, could not testify to the standard of care for NP Alicia Mahoney absent the same special showing. *Id.* We conclude that the district court abused its discretion by not applying California's expert competency rule to the medical negligence and dependent adult abuse claims. We vacate the decision of the district court as to the California medical negligence and dependent adult abuse claims, and remand for the district court to determine in the first instance what expert testimony is admissible as to Dr. Wallace, Dr. Zasorin, and NP Mahoney's standards of care under California law.

3. Third, we consider whether the district court erred by granting summary judgment for Defendants on Trujillo's federal claim under 42 U.S.C. § 1983 and intentional infliction of emotional distress claim.[1] Federal claims are not governed by California's expert competency rule, but are instead subject to Federal Rule of Evidence 702, which governs the admissibility of expert testimony. There is no per se rule on federal claims restricting the deliberate indifference analysis to same

---

[1] Trujillo's intentional infliction of emotional distress claim is premised on the conduct he alleges also violates § 1983.

7

specialty experts. *See, e.g.*, *Morin v. E. Me. Med. Ctr.*, 780 F. Supp. 2d 84, 90 (D. Me. 2010) ("Because Ms. O'Brien is a nurse does not mean she is not an expert.") (citing *Santos v. Posadas De P.R. Assocs.*, 452 F.3d 59, 63 (1st Cir. 2006) for the proposition that experts "come in various shapes and sizes" and there "is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field"). Rather the court must determine whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, and whether the opinion will help the trier of fact. Fed. R. Evid. 702.

Here, the district court did not make any evidentiary ruling on whether NP Wilson and Nurse Moore's declarations were admissible despite Defendants' objection to their inclusion on evidentiary grounds. The district court mentioned in passing that it did not know if it would find NP Wilson and Nurse Moore qualified to be experts, but the district court did not conduct a *Daubert* analysis.[2] Without this analysis, we cannot defer to the district court's rejection of Trujillo's expert

---

[2] At least one district court has found a nurse competent to testify regarding the type of treatment a patient would be expected to receive from their physician based on the patient's diagnosis. *See, e.g.*, *Corrigan v. Methodist Hosp.*, 234 F. Supp. 2d 494, 500 (E.D. Pa. 2002), *aff'd,* 107 F. App'x 269 (3d Cir. 2004) ("Moreover, we also find Ms. Patterson's testimony to be well within her ken as a rehabilitation expert/consultant who was charged with the development of a life care plan for the plaintiff. We cannot find that she diagnosed or otherwise identified a disease afflicting the plaintiff from her symptoms; it rather appears that she reviewed Ms. Corrigan's medical and treatment history and testified concerning what types of treatment Ms. Corrigan could expect to receive from her doctors in the future.").

testimony or, conversely, conclude that it was an abuse of discretion for the district court to exclude the declarations. We therefore vacate the district court's ruling on the § 1983 and intentional infliction of emotional distress claims, and remand for the district court to consider whether Trujillo's expert testimony is admissible under Federal Rule of Evidence 702.

Further, when ruling on Trujillo's § 1983 claim, the district court applied the subjective standard to consider whether the medical providers had been deliberately indifferent in their care of Trujillo. But, we recently decided in *Gordon v. County of Orange* "that claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." 888 F.3d 1118, 1124–25 (9th Cir. 2018) (quoting *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1070 (9th Cir. 2016)). Because the district court did not have the benefit of *Gordon* and therefore incorrectly relied upon the subjective test for deliberate indifference, we vacate and remand the § 1983 claim on this ground as well.

4. Fourth, we consider whether the district court erred by granting summary judgment for Defendants on Trujillo's ADA and Rehabilitation Act claims. The parties do not dispute the first two elements of the claims—Trujillo is disabled and he was qualified to receive access to other prison programs—but they disagree

9

about whether any difference in treatment Trujillo received was "by reason of" his disability. *See Updike v. Multnomah Cty.*, 870 F.3d 939, 949 (9th Cir. 2017).

Although Lt. Petrocelli stated reasons why Trujillo could not participate in general activity time or have a television, the reasons supplied were on account of his disability. A prisoner with Trujillo's K-10 classification would normally have access to television. The record supports that prisoners in the CTC did not have televisions because of the single inmate cell arrangement, but other prisoners in the CTC had the ability to read books or magazines and had the ability to make telephone calls despite needing to be kept away from the general prison population. The prison did not make an accommodation for Trujillo to be able to read until a few months before he was transferred, and Trujillo was at the mercy of nursing staff and a chaplain to be able to make phone calls. The fact that Trujillo was not given a call button because cords could be used for suicide permits the inference that there was no acknowledgment of Trujillo's special circumstance. His evidence demonstrated that there was no way he could use the cord for suicide when he could not move any muscles below the breast. We conclude that there are genuine disputes of material fact that preclude summary judgment in favor of Defendants on the ADA and the Rehabilitation Act claims, and we vacate the district court's judgment on those claims.

Because we may affirm on any ground supported by the record, *see Pentax Corp. v. Myhra*, 72 F.3d 708, 710 (9th Cir. 1995), and there may be certain claims on which thus far there has been no supporting evidence whatsoever, we have considered whether we should affirm dismissal of certain claims on that basis to simplify the case after the remand. However, because the district court based its ruling solely on the ground that there were no disputed facts, and we have rejected that determination and remanded for the district court to make decisions on admissibility of expert testimony, it would be premature for us to rule on the adequacy of the evidence to create a genuine factual dispute relevant to any claim at this stage. And we decline to do so. It is more appropriate for the district court to make decisions on the sufficiency of the evidence for claims in the first instance after resolving admissibility of the declarations of Dr. Dobkin, NP Wilson, Nurse Moore, and any other witnesses. Once all evidentiary issues are resolved by rulings of the district court, the district court should then consider if there is evidence supporting particular claims in light of the admitted expert and other testimony. At that point, the district court will be able to determine if there are any genuine factual disputes that preclude summary judgment and require trial.

Defendants shall bear the cost on appeal.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

11