# Brito v. MAC International Inc.

*Joanne W. Rathgeber,* for plaintiffs.
*Michael Panichelli,* for defendant.

PAPALINI, *J.,* January 12, 2006—Defendant, MAC International Inc., has filed an appeal of our order denying its motion for post-trial relief.

## I. FACTUAL HISTORY

(1) The plaintiffs, Reyna Vasquez and her husband Gilbert Brito, commenced suit on May 6, 2003, alleging that defendant MAC, who owned the apartment building where they lived, negligently failed to act to evict a sexual pervert, Derek Johnson, who was living in the unit next door without authorization, and who, by his actions, caused physical and emotional distress to the plaintiffs and constructively deprived them of the use of their home.

(2) A jury trial was held in January of 2005. Plaintiffs were represented by Joanne W. Rathgeber, Esquire, and the defendant by Elizabeth McKenna, Esquire. The jury found in favor of plaintiff Reyna Vasquez in the amount of $539,000 and in favor of plaintiff Gilbert Brito in the amount of $40,000, holding that the defendant had been negligent as to both plaintiffs and that the negligence was a substantial factor in bringing about harm to them.

(3) Defendant filed a timely motion for post-verdict relief. Briefs were filed.

(4) On June 6, 2005, we issued an order denying the defendant's motion.

(5) Defendant filed a timely notice of appeal.

(6) On July 19, 2005, we ordered defendant to file by August 22, 2005, a concise statement of the matters that

it actually intended to raise on appeal, pursuant to Pa.R.A.P. 1925(b). In response, defendant filed an 11-page statement.

## II. ISSUES

The defendant contended that the court erred in not granting it a judgment notwithstanding the verdict for the following reasons:

(1) The evidence was not sufficient to establish the prima facie elements of a negligence claim based on a landowner's duty to business invitees (citing N.T. 1/26/05 at 4-7);

(2) The evidence was not sufficient to establish the prima facie elements of a negligence claim based on a landlord's duty to tenants (citing N.T. 1/25/05 at 152-55);

(3) The evidence was not sufficient to establish the prima facie elements of a contract claim based on the implied warranty of habitability (citing N.T. 10/12/04 at 127-30; N.T. 1/26/05 at 96-97);

(4) The evidence was not sufficient to establish the prima facie elements of a contract claim based on the implied covenant of quiet enjoyment habitability (citing N.T. 10/12/04 at 127-30; N.T. 1/26/05 at 96-97).

The defendant also contended that the court erred in not granting defendant a new trial for the following reasons:

(1) The trial court erred in allowing plaintiffs to introduce, offer evidence of, and otherwise make use of, documents and information concerning Derek Johnson's al-

leged prior criminal record in support of their claim that defendant negligently failed to provide security (citing N.T. 1/20/05 at 76-85, 76-88, 89-101, N.T. 1/21/05 at 1-18);

(a) As a matter of law, defendant had no duty to provide security;

(b) Plaintiffs did not establish that Mr. Johnson's alleged prior criminal record was relevant to its claim that defendant negligently failed to provide security (citing N.T. 1/25/05 at 116, 117-19);

(c) Plaintiffs did not establish that any documents regarding Mr. Johnson's alleged prior criminal record were admissible as official records (citing N.T. 1/20/05 at 76-77; N.T. 1/25/05 at 116, 117-19);

(d) Plaintiffs did not establish that any documents regarding Mr. Johnson's alleged prior criminal record were admissible as business records (citing N.T. 1/20/05 at 76-77);

(2) The trial court erred in charging the jury on, and submitting this case to the jury on, plaintiffs' negligence claims (citing N.T. 1/26/05 at 4-7; N.T. 1/26/05 at 16-17; N.T. 1/25/05 at 152-55);

(3) The trial court erred in charging the jury on, and submitting this case to the jury on, plaintiffs' contract claims (citing N.T. 1/25/05 at 127-30; N.T. 1/26/05 at 96-97);

(4) The trial court erred in charging the jury on "a trespasser" (citing N.T. 1/26/05 at 13-15, 96-97);

(5) The trial court erred in charging the jury on, and permitting the jury to consider and award, damages for

harm such as pain and suffering, emotional distress, embarrassment and loss of life's pleasures (citing N.T. 1/25/05 at 123-25);

(6) The trial court erred in permitting plaintiffs to introduce into evidence the deposition testimony of Police Officer Wilson (citing N.T. 1/24/05 at 10-15).

## III. STANDARD OF REVIEW

A trial court must enter judgment notwithstanding the verdict only if the movant is entitled to judgment as a matter of law or if the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. A lower court's grant or denial of a judgment notwithstanding the verdict will be disturbed only for an abuse of discretion or an error of law. *Lockwood v. City of Pittsburgh,* 561 Pa. 515, 519, 751 A.2d 1136, 1138 (2000); *Moure v. Raeuchle,* 529 Pa. 394, 403, 604 A.2d 1003, 1007 (1992). In reviewing a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, who must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in favor of the verdict winner. *City of New Castle v. Uzamere,* 829 A.2d 763, 767 (Pa. Commw. 2003).

The admission of evidence rests within the sound discretion of the trial court. To constitute reversible error, the trial court's ruling on evidence or jury instructions must not only be erroneous, but it must be harmful or prejudicial to the complaining party. *Johnson v. Hyundai Motor America,* 698 A.2d 631, 636 (Pa.Super. 1997).

## IV. TRIAL EVIDENCE

Plaintiffs Gilbert Brito and Reyna Vasquez had been tenants of Apartment 2-E of the Oxford Towers Apartments, 7210 Oxford Avenue, Philadelphia, Pennsylvania, since March of 1999, when they signed a lease. (NT. 1/20/05 at 38-39.)[1] The building was managed by Defendant MAC. (N.T. 1/20/05 at 28.) Ann Marie Doan was the property manager for MAC. (N.T. 1/21/05 at 113.)

The lease included the following clause: "B. No disturbance to others. The tenant will not do anything to disturb other tenants." It also contained two other provisions: "Tenant agrees not to conduct illegal activities on the property" and "Tenant's family and guests agree to obey all laws and rules that apply to tenant." Finally, the lease provided that if the tenant failed to comply with the provisions of the lease, he could be evicted after five days notice. (N.T. 1/21/05 at 115-17.)

The main door to the building was *unlocked* and entered into a vestibule. A second door leading inside from the vestibule, was locked. (N.T. 1/20/05 at 39-40.)

Mr. Brito was aware that Mr. Roznowski and a young man lived in the apartment next door to them. (N.T. 1/20/05 at 40-41.) Ms. Vasquez once discussed the young man with him. She too knew that he lived next door. She felt that he was either on drugs or alcohol. (N.T. 1/20/05 at 42-43; N.T. 1/21/05 at 84.)

---

1. Our page references to N.T. of January 20, 2005, are to the volume that includes opening statements.

On December 20, 2000, at about 2 a.m., Ms. Vasquez was returning home from working a night shift job and was entering her apartment building, when she saw the man from Apartment 2-F masturbating (he ejaculated) in the vestibule at the building's entrance. Mr. Brito called the police, who arrived about an hour later. An officer took a report, suggested that Ms. Vasquez carry mace and advised them to report the incident to the building management. (N.T. 1/20/05 at 45-47; N.T. 1/21/05 at 49.)[2]

On December 28, 2000, Mr. Brito delivered a letter, signed by Ms. Vasquez, detailing that and other incidents, to a secretary, Jennifer Giraldo, in the management office of Oxford Towers. The letter described the perpetrator but did not identify him or indicate that he lived in Apartment 2-F, because Ms. Vasquez was only 99 percent sure and did not want to make accusations about the wrong person. (N.T. 1/20/05 at 48-49; N.T. 1/21/05 at 51-52, 86.) However, Mr. Brito told Ms. Giraldo, and *we found his testimony to be credible,* that Ms. Vasquez had told him that that *"it was the guy living in 2-F."* (N.T. 1/20/05 at 50.) Ms. Giraldo then spoke about an incident of a man running naked in the hallway. (N.T. 1/20/05 at 51.)

Giraldo gave the letter to property manager Ann Marie Doan. (N.T. 1/25/05 at 5, 7.)

Two employees of MAC lived in the apartment house: the vice-president of MAC, Laurie McHugh, and a maintenance man, William Flannagan (Billy). (N.T. 1/20/05 at 61; N.T. 1/25/05 at 10.)

---

2. Plaintiff Vasquez testified that the incident occurred on Saturday, which would make it December 23 not December 20, 2000.

After McHugh saw the letter of December 28, 2000, she instructed Ann Marie Doan to make sure the building was secure. McHugh and her husband then made daily building checks of the area late at night, looking for someone walking around. She also instructed Flannagan to keep an eye out. (N.T. 1/25/05 at 57-59.)

However, no one from MAC contacted the plaintiffs about the letter. (N.T. 1/20/05 at 52; N.T. 1/21/05 at 52.)

After the first incident, Ms. Vasquez would phone her husband when she arrived home from work and he would come down to meet her, armed with a weapon, leaving their young son alone in the apartment. (N.T. 1/20/05 at 53-54; N.T. 1/21/05 at 51.)

On March 17, 2001, at about 2:30 a.m., Ms. Vasquez was again returning home from work, when she once again saw the man masturbating in the entrance vestibule. She called her husband on her cell phone. (N.T. 1/20/05 at 55; N.T. 1/21/05 at 53.)

Mr. Brito came down to the entrance and, thinking the police officer was the perpetrator, he mistakenly sprayed the officer with mace or pepper spray. Mr. Brito was then punched in the face repeatedly by the officer. He was kept handcuffed in a police car for about a half hour before being released. (N.T. 1/20/05 at 55-58, 156-57; N.T. 1/21/05 at 54.) The police told them that the sex crimes unit would contact them. (N.T. 1/20/05 at 58, 152.)[3]

The Plaintiffs were driven to the Special Victims Unit by a police officer a few days later and interviewed by

_____

3. This unit of the Philadelphia Police Department is actually called the Special Victims Unit. (N.T. 1/24/05 at 32.)

Officer Mimi Wilson, who was not able to ascertain the name of the perpetrator who lived in 2-F. (N.T. 1/20/05 at 59-60, 158; N.T. 1/21/05 at 55-56.)

The plaintiffs did not report this second incident to the apartment management. Ms. Vasquez believed that the police would contact management. (N.T. 1/20/05 at 154; N.T. 1/21/05 at 57.)

On May 19, 2001, at about 3:30 a.m., again returning from work, Ms. Vasquez was parking her car in the building's parking lot when she saw the same man walk out from behind some bushes and motion to her to come to him. (N.T. 1/20/05 at 68; N.T. 1/21/05 at 61.) She drove to Rite Aid and called her husband and the police. Two female police officers arrived and escorted her first to her apartment and then to Apartment 2-F. *The perpetrator was standing at the open door to Apartment 2-F.* (N.T. 1/20/05 at 70; N.T. 1/21/05 at 61-62.)

On May 20, 2001, Ms. Vasquez presented another letter to MAC, specifically complaining about the tenant in 2-F, which was received by Jennifer Giraldo. (N.T. 1/20/05 at 107, 115-16; N.T. 1/21/05 at 63.)

MAC never addressed the plaintiffs' complaint. (N.T. 1/20/05 at 117.)

On July 2, 2001, Ms. Vasquez picked Derek Johnson's photo from an array shown to her at the police station by Officer Wilson, but she was not told the name of the perpetrator. (N.T. 1/20/05 at 105, 159; N.T. 1/21/05 at 64, 90, 91; N.T. 1/24/05 at 48-49, 75, 82.) Derek Johnson was a white male, 31 years old. The police were unable to apprehend Johnson at Apartment 2-F. He was residing at 8273 Jamison Street at the time of his arrest on March 22, 2004. (N.T. 1/24/05 at 86-89.)

After this third incident, plaintiffs requested that they be moved to another building or another apartment in the Oxford Towers complex away from Apartment 2-F. At first, they were told by Jennifer Giraldo that there would soon be another apartment available, and Mr. Brito expressed his desire to take it, but eventually it was rented to another person. (N.T. 1/20/05 at 122-23.) Thereafter, they gave notice of intent to move and ultimately moved at the end of September of 2001. (N.T. 1/20/05 at 124-26.)

Plaintiffs represented evidence that there were many other apartments available, but none were offered to them. (N.T. 1/21/05 at 196-98.) In fact, Ann Marie Doan managed 10 buildings for MAC, with 348 apartments. (N.T. 1/21/05 at 114.)

The named and listed tenant for Apartment 2-F was Olga Roznowski. The person living in Apartment 2-F was Herbert Roznowski, the tenant's son. Mr. Roznowski had moved in with his mother in 1993 or 1994, to care for her, and at that time, he had notified Lawncrest Reality, the then current management, of the arrangement. (N.T. 1/20/05 at 24-25, 27-28.) Therefore, he was *not the tenant, but was permitted to live there to help his mother.*

Ms. Olga Roznowski, the tenant, died in 1999. Mr. Roznowski never notified the landlord of this fact, but just kept paying the rent for his deceased mother at MAC's office on Bustleton Avenue, where he met Ann Marie Doan and Jennifer Giraldo. (N.T. 1/20/05 at 25, 27-28.)

Mr. Roznowski permitted his stepson, Derek Johnson, to live with him and never notified the landlord of same. (N.T. 1/20/05 at 25-26.)

After Mr. Roznowski received notice that MAC International was the new management company, he never notified MAC that Olga Roznowski had died, that he was living there or that his stepson was living there. (N.T. 1/20/05 at 27-28.)

Therefore, both father and stepson lived in the apartment of the deceased tenant, Olga Roznowski and never notified the landlord, MAC, and the landlord never investigated as to why two people who were not tenants were living in the apartment of Olga Roznowski.

Mr. Roznowski's stepson, Derek Johnson, had been arrested five times for deviant sexual behavior and subsequently convicted four times, as set forth in detail in footnotes 4 to 6.

If the defendant's employees had investigated, they would have found that Johnson had been arrested and convicted for other sex crimes, similar to those experienced by Ms. Vasquez.

Pursuant to an incident report from February 24, 1997, there had been an episode involving Derek Johnson at 7030 Rising Sun Avenue, which was almost identical to what had happened in the instant case. Johnson pled guilty to indecent exposure and open lewdness, for which he received probation. (N.T. 1/20/05 at 84-85; N.T. 1/26/05 at 32.)[4] There was another incident on May 5, 2000, relating to Johnson, where his address was given as 7210 Oxford Avenue. (N.T. 1/26/05 at 33.)[5] On March 26,

---

4. Johnson was sentenced on September 25, 2001.

5. Although no details were placed in evidence, court records indicate that Johnson was convicted of loitering and prowling and given two years probation. He was sentenced to an additional year of probation in 2003, pursuant to a violation of probation hearing.

2001, there was yet another incident at 3199 Ryan Avenue in Philadelphia, where Johnson was caught exposing himself and masturbating near a school. (N.T. 1/20/05 at 85-86; N.T. 1/26/05 at 43-45.)[6]

Mary Ann Doan testified that she received the December 28, 2000 letter which Ms. Vasquez had written from Jennifer Giraldo, who told her that Mr. Brito said that the man in question lived on the first floor. Ms. Doan stated that she believed that she left a message for the plaintiffs on their answering machine, *but the plaintiffs never received any message.* (N.T. 1/20/05 at 52; N.T. 1/21/05 at 141, 146.) Ms. Doan conducted no further *investigation* into the complaint. (N.T. 1/21/05 at 144-46, 148.)

After the May 20, 2001 incident, Ms. Doan went to Apartment 2-F looking for Mr. Roznowski, and a young man, presumably Johnson, answered the door. (N.T. 1/21/05 at 129-32.) Ms. Doan telephoned the Special Victims Unit on June 3, 2001. She told Officer Wilson that she had spoken with the alleged offender, whose name she did not know, and that he denied it. (N.T. 1/24/05 at 70.) Thereafter, Ms. Doan did not respond to further police inquiries until June 25, 2001, when she left a phone message at the Special Victims Unit stating that she had not learned the name of the occupant of Apartment 2-F. (N.T. 1/24/05 at 61.)

---

6. Criminal records reveal that Johnson was also arrested on September 13, 2002, and convicted in February 10, 2003, of indecent exposure, luring a child and other similar offenses and sentenced to less than one year in county jail. On June 14, 2005, he was arrested for indecent exposure, open lewdness and disorderly conduct and awaits trial.

Thereafter, Ms. Doan never attempted to evict Johnson from Apartment 2-F; she never demanded of Mr. Roznowski that he provide the name to her of the young man residing in Apartment 2-F; beyond the alleged answering machine message, she never attempted to contact Ms. Vasquez. (N.T. 1/21/05 at 155-58.)

Laurie McHugh, vice president of MAC, also read the letter of December 28, 2000. She never contacted Ms. Vasquez or the police. (N.T. 1/21/05 at 186-88.)

As to injuries, after the scuffle with the police on March 17, 2001, plaintiff Brito suffered pain in his shoulder, and after an MRI, was diagnosed with tendonitis. He received injections into the shoulder and physical therapy. He was treated by his family doctor, an orthopedic specialist and a pain management specialist. Surgery was recommended. (N.T. 1/20/05 at 67, 137-44.)

Ms. Vasquez suffered extreme emotional upset after each incident, which upset was of a continuing nature, including depression, stress, frustration, panic and sleeplessness. She did not want to use the laundry in the basement, had panic attacks and could not sleep well. (N.T. 1/20/05 at 121; N.T. 1/21/05 at 51, 55.) After the second incident, she spent Fridays and Mondays sleeping at her sister's home, because those were the days that she was very late coming home from work. This arrangement adversely affected her work. (N.T. 1/20/05 at 68; N.T. 1/21/05 at 57-60.) After the third incident, whenever Ms. Vasquez worked late, she slept at her sister's home. Essentially, she only slept in Apartment 2-E on weekends. (N.T. 1/20/05 at 120, 121.) At the time of trial, she still experienced fear of the dark, she did not use elevators, she felt panic whenever she was on Rising Sun Avenue

and tried to avoid the street, and she did not sleep well. (N.T. 1/21/05 at 82.)

After the plaintiffs moved in September of 2001, their rent was $200 to $300 higher. They were not able to find another apartment which they could afford. (N.T. 1/20/05 at 127-28; N.T. 1/21/05 at 68.)

## V. DISCUSSION

### A. *Judgment N.O.V.*

The defendant contended that the evidence was not sufficient to establish the prima facie elements of a negligence claim based on a landowner's duty to business invitees (citing N.T. 1/26/05 at 4-7) or on a landlord's duty to tenants (citing N.T. 1/25/05 at 152-55). The defendant also argued that the evidence was not sufficient to establish the prima facie elements of a contract claim based on the implied warranty of habitability (citing N.T. 10/12/04 at 127-30; N.T. 1/26/05 at 96-97) or on the implied covenant of quiet enjoyment habitability (citing N.T. 10/12/04 at 127-30; N.T. 1/26/05 at 96-97).

First, it should be noted that the jury was only asked to determine whether the defendant was negligent. Although we instructed the jury on elements of landlord-tenant law, the jury was not asked to decide if there had been a breach of contract. They were only asked to determine whether the breaches supported a claim of negligence.

In arguing against the defendant's motion for judgment n.o.v., plaintiffs relied upon the following provisions of the Restatement of the Law, (Second) Torts:

Section 360 provides:

"A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe."

Section 302B states:

"An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm even though such conduct is criminal."

Section 448 states:

"The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime."

Section 449 provides:

"If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which

makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby."

In the case at bar, we concluded that plaintiffs had sustained their burden of proving that defendant MAC was *negligent* and that the negligence was a substantial factor in causing them harm, by presenting credible evidence that: (1) defendant MAC, through its employees Ann Marie Doan and Jennifer Giraldo, was on notice that Herbert Roznowski, who was not the named tenant, was residing in Apartment 2-F; (2) Derek Johnson resided in Apartment 2-F with his stepfather Herbert Roznowski; (3) Derek Johnson was a sexual deviant who committed intentional torts on December 20, 2000, March 17, 2001 and May 19, 2001, that victimized Ms. Vasquez and Mr. Brito; (4) as of December 28, 2000, defendant MAC had notice that a sexual crime had been committed against Ms. Vasquez and that the perpetrator lived in Apartment 2-F; (5) McHugh undertook the responsibility to keep the building safe but took totally inadequate steps to do so; (6) between December 28, 2000 and May 20, 2001, the defendant took no reasonable steps to identify the perpetrator living in Apartment 2-F; (7) that after May 20, 2001, defendant took entirely inadequate steps to identify the perpetrator living in Apartment 2-F; (8) even after Derek Johnson was identified, defendant took no steps to evict him from the building; (9) plaintiffs were deprived of the quiet enjoyment of their apartment; (10) plaintiffs were forced to vacate their apartment, thereby suffering a constructive eviction; and (11)

the plaintiffs both suffered physical, emotional and monetary damages as a result of the defendant's negligence.

Therefore, we properly denied the defendant's motion for judgment n.o.v.

## B. *New Trial*

### 1. Evidence Regarding Derek Johnson

The defendant argued that we erred in allowing plaintiffs to introduce, offer evidence of, and otherwise make use of, documents and information concerning Derek Johnson's alleged prior criminal record in support of their claim that defendant negligently failed to provide security (citing N.T. 1/20/05 at 76-85, 76-88, 89-101; N.T. 1/21/05 at 1-18) because: (1) as a matter of law, defendant had no duty to provide security; plaintiffs did not establish that Mr. Johnson's alleged prior criminal record was relevant to its claim that defendant negligently failed to provide security (citing N.T. 1/25/05 at 116, 117-19); plaintiffs did not establish that any documents regarding Mr. Johnson's alleged prior criminal record were admissible as official records (citing N.T. 1/20/05 at 76-77; N.T. 1/25/05 at 116, 117-19) or business records (citing N.T. 1/20/05 at 76-77).

Although there was much argument about the admissibility of evidence concerning other sexual offenses committed by Johnson, in the end the jury was given a rather sanitized account of Johnson's history by Mr. Brito and Ms. Rathgeber. (See N.T. 1/20/05 at 84-86; N.T. 1/26/05 at 32, 33, 43-45.) Furthermore, no supporting documents were sent out with the jury and none were requested by the jury. (N.T. 1/24/05 at 19.)

We properly held that the evidence was admissible to support the plaintiffs' argument that if the defendant had done any investigation other than walks around the premises, after the plaintiff's letter of December 28, 2000, they would have learned from public records the address and identity of Derek Johnson.

We correctly ruled that the evidence was based on both the business records and official records exception to the hearsay rule. Furthermore, even if the evidence was inadmissible hearsay, defendant was in no way prejudiced because there has been no allegation that the documents submitted by the plaintiffs were in any way false or inaccurate, or that they did not pertain in fact to the Derek Johnson who resided in Apartment 2-F. We properly denied the defendant a new trial on this issue.

### 2. Testimony of Police Officer Wilson

The defendant contended that we erred in permitting plaintiffs to introduce into evidence the deposition testimony of Police Officer Wilson (citing N.T. 1/24/05 at 10-15).

Officer Wilson was deposed. Approximately two weeks prior to trial, she delivered a child and was on maternity leave. Neither the Special Victims Unit nor the City Solicitor's Office would accept plaintiff's subpoena or permit her to testify because she was not on duty and *police department regulations forbid it*. (N.T. 1/24/05 at 10-15.) Therefore, we properly ruled that she was an unavailable witness and her deposition testimony was admissible. Pa.R.C.P. 4020(a)(3).

The content of the deposition was relevant and admissible. (See N.T. 1/24/05 at 32-110.)

### 3. Jury Charge

The defendant argued that we erred in charging the jury on, and submitting this case to the jury on, plaintiffs' negligence claims (citing N.T. 1/26/05 at 4-7; N.T. 1/26/05 at 16-17; N.T. 1/25/05 at 152-55) and contract claims (citing N.T. 1/25/05 at 127-30; N.T. 1/26/05 at 96-97).

We correctly concluded that the plaintiffs had proven their claim that the defendant was negligent. We properly instructed the jury on negligence, the obligations and duty of care of an occupier of land, and we also properly instructed them on landlord-tenant law only as it pertained to the negligence claim. (N.T. 1/26/05 at 81-83, 90-95.)

Defendant contended that we erred in charging the jury on "a trespasser" (citing N.T. 1/26/05 at 13-15, 96-97).

The defense position was that there was no trespass because the door leading into the vestibule was not locked and was open to the public. (N.T. 1/26/05 at 13.)

We concluded that a trespass could occur even under those circumstances. Derek Johnson was neither a tenant nor a guest of a tenant, because the tenant (Olga Roznowski) was dead. Management never inquired as to whom was living in Apartment 2-F. Therefore, we properly charged the jury on the law regarding a criminal intrusion and trespass. (N.T. 1/26/05 at 92-93.)

Defendant argued that we erred in charging the jury on, and permitting the jury to consider and award, dam-

ages for harm such as pain and suffering, emotional distress, embarrassment and loss of life's pleasures (citing N.T. 1/25/05 at 123-25).

At the charging conference, defense counsel argued that in order to support a claim of emotional distress, plaintiff Vasquez needed a doctor to come in and support her claims of what happened to her as far as not being able to sleep and the fact that she was depressed. Counsel did not argue that it was necessary that plaintiff received treatment in order to recover. (See N.T. 1/25/05 at 124-25.)

In *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970), the Pennsylvania Supreme Court abandoned the requirement of a physical impact in favor of a "zone of danger" rule where the complainant was in personal danger of impact from a negligently created force. The Supreme Court thus established a cause of action for negligent infliction of emotional distress where the complainant's injury resulted from his or her reasonable fear of injury. See also, *Covello v. Weis Markets Inc.,* 415 Pa. Super. 610, 610 A.2d 50 (1992).

In the case at bar, plaintiff Vasquez did not suffer an impact. However, she was certainly within the zone of personal danger and shock when she witnessed Derek Johnson masturbating within a few feet of her person.

Therefore, she was entitled to recover damages for emotional distress.

Ms. Vasquez' sister, Frances Morales, graduated from a university with a degree in psychology, continued her education in the field and had been working at the North-

east Community Mental Health Center in Philadelphia. (N.T. 1/21/05 at 98-99.)

The court permitted her to testify about the demeanor of her sister during the period in question: that she was sad, weepy, in a bad temper, afraid of the dark and unable to sleep. (N.T. 1/26/05 at 101-102.)

Mr. Brito testified, without objection, that his wife suffered from "depression, stress, frustration, panic" and she was not sleeping well. (N.T. 1/20/05 at 121.)

A co-worker of plaintiff's, Elasa Oballas, testified *without objection,* that after the second incident in March of 2001, she sensed that Ms. Vasquez "was in a depression. She was very afraid." (N.T. 1/21/05 at 106.)

In *Montgomery v. Bazaz-Sehgal,* 568 Pa. 574, 590, 798 A.2d 742, 752 (2002), our Supreme Court said that: "The law is well established that expert testimony is not necessary where the cause of an injury is clear and where the subject matter is within the experience and comprehension of lay jurors. As the Superior Court so aptly noted, laypersons are certainly capable of comprehending, without the assistance of an expert, appellees' mental and emotional damages. . . ."

We correctly held that the testimony of plaintiff Vasquez, supported by the testimony of her husband, sister and co-worker, was sufficient to support a jury instruction on emotional distress, embarrassment and loss of life's pleasures. (N.T. 1/26/05 at 89-90.)

Mr. Brito suffered a physical injury as a result of his mistaken confrontation with the police on March 17, 2001. He too was entitled to compensation for his pain

and suffering, emotional distress and loss of life's pleasures for the period of his disability.

For the reasons set forth above, the defendant's motion for post-trial relief was denied.