Steven **JOHNSON** and DeLee Johnson, Appellee,

v.

**HYUNDAI MOTOR AMERICA** and McCafferty Hyundai Sales, Inc., Appellees. (Two Cases.)

Appeal of **HYUNDAI MOTOR AMERICA**, Appellant.

Appeal of **McCAFFERTY HYUNDAI SALES, INC.,** Appellant.

Superior Court of Pennsylvania.

Argued April 29, 1997.
Filed July 29, 1997.

Robert Tolaud, II, Philadelphia, for Hyundai Motor America.

Joseph S. Britton, Langhorne, for Steven Johnson and Delee Johnson.

Francis J. Sullivan, Newton, for McCafferty Hyundai Sales, Inc.

\* Retired Justice assigned to Superior Court.

Before BECK, POPOVICH and MONTEMURO\*, JJ.,

MONTEMURO, Judge.

Appellants, Hyundai Motor America (Hyundai) and McCafferty Hyundai Sales, Inc. (McCafferty) appeal from the judgment entered in the Bucks County Court of Common Pleas following the denial of their post-trial motions for judgment notwithstanding the verdict (JNOV) and/or a new trial. For the reasons set forth below, we affirm. The facts giving rise to the underlying action are as follows. On June 1, 1988, Appellees, Steven and DeLee Johnson, bought a 1988 Hyundai GLS sedan from McCafferty, an authorized Hyundai dealer and repair facility. The car was manufactured by Hyundai and was equipped with an anti-theft device installed by McCafferty. At the time of the purchase, Appellees were given a handbook that contained various warranty and consumer information including the following:

> Keeping with its "can do" attitude, Hyundai is focusing its abilities and resources towards maintaining a strong sales, parts and service network throughout the U.S., with special emphasis placed on satisfying the needs of their customers. Hyundai realizes that success in the American marketplace can only be achieved by an unswerving commitment to customer satisfaction. Consistent with this understanding Hyundai is endeavoring to insure its products receive the best public acceptance of any product in automotive history.
>
> **Your satisfaction is our concern.** Hyundai is a customer oriented company, dedicated to having the best customer acceptance of any product with quality design and workmanship. *Hyundai dealerships are in the best position to assist you in sales, service or part needs.*

(Trial Ct. Op. at 1–2) (emphasis added).

When Appellees purchased their vehicle, they obtained a warranty from Hyundai for twelve months or 12,500 miles. In addition to the manufacturer's warranty, they also separately purchased a warranty from McCafferty for five years or 50,000 miles.

Shortly after purchasing their new Hyundai, Appellees began to experience serious difficulty with its performance. The ensuing difficulties are aptly summarized by the trial court as follows:

[Approximately one month after the purchase of the Hyundai,] on July 10, 1988, the car would not start when the key was placed in the ignition. The car was towed to McCafferty. The mileage on the car at that time was 2,497 miles. McCafferty advised plaintiffs that it had fixed the car, replaced the anti-theft device, and issued a work order indicating the work done on the car. The repair order indicated that a fuse had been replaced.

Five days later, on July 15, 1988, [Appellees] experienced the no start condition again. Once again, the car was towed to McCafferty, and McCafferty purportedly fixed the car. This time, McCafferty did not provide a repair receipt, despite the fact that [Appellees] specifically asked for one. Also at this time, the anti-theft device was removed from the car.

Seven days later, on July 22, 1988, [Appellees] experienced the no start condition for the third time. At this point, the car had been driven 2,582 miles. Again the car was towed to McCafferty. McCafferty purportedly repaired the car and issued a repair order. The repair order indicated a fuse had been replaced.

Finally, on August 13, 1988, [Appellees] experienced the no start condition for the fourth time. Now, the vehicle had 2,896 miles on it. The service order again indicated that fuses had been replaced. Moreover, the service records indicate that the time spent attempting to repair the car on the third and fourth attempts was about two tenths of an hour, with minimal cost to the dealership.

(Trial Ct. Op. at 2–3).

After the fourth no start condition, Appellees decided that they were not going to accept the return of the vehicle. Instead, Appellees mailed letters to Consumer Affairs and telephoned the office of Hyundai's president, but to no avail. As a result, Appellees sought legal advice and brought suit against Hyundai and McCafferty under the Pennsyl-

vania Automobile Lemon Law ("Lemon Law"), 73 P.S. §§ 1952–63; the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201–1 to 201–9.2; the Pennsylvania Uniform Commercial Code, Article II Sales, 13 Pa.C.S.A. §§ 2101–07; and the Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301–12.

On August 12, 1995, Appellees filed a Praecipe for Arbitration. Following a hearing, an arbitration award was entered on September 28, 1995, awarding $12,500 in favor of the Appellees and against Hyundai, and $12,500 in favor of Appellees and against McCafferty. On October 23, 1995, McCafferty appealed the decision of the arbitrators, and the matter proceeded to trial.

For the eight years between August 15, 1988, when Appellees refused return of the vehicle, and the January 25, 1996 trial date, the car remained untouched at McCafferty while Appellees dutifully paid all of their monthly payments on the car loan. However, on January 24, 1996, one day before trial, two master technicians from McCafferty, Mr. Richard DeFeo and Mr. Paul, inspected the car in a serious effort to discover the problem. After six hours, they found the real difficulty. At trial, Mr. DeFeo testified that as of the time of inspection, "it was pretty obvious that there was something not right there." (N.T. 1/29/96 at 91). His thorough inspection revealed that "a short to ground had caused the system to burn" with respect to all of the no start problems. (*Id.* at 96).

During trial, the court entered nonsuit on Appellees' claim under the Lemon Law because their vehicle, although purchased in Pennsylvania, was registered in New Jersey and, therefore, did not meet the prerequisites for eligibility under the Lemon Law. At the close of the trial, the jury answered special interrogatories, finding both Appellants in breach of certain warranties, and finding that McCafferty had made repairs or replacements on the vehicle of a nature or quality below the standard of that agreed to in writing. The jury concluded, however, that neither Appellant acted fraudulently.

Following the damages phase of trial, the jury awarded $17,709.70 in compensatory

damages. The court then trebled this award, pursuant to its discretion under UTPCPL, for a total of $53,129.10. The court also added to the award attorney's fees and costs of $11,500, and interest in the amount of $2,878.40, resulting in a total verdict of $67,507.50.

Following the verdict, Hyundai and McCafferty filed motions for post-trial relief seeking judgment notwithstanding the verdict (JNOV) and/or a new trial. After oral argument, Appellants' motions were denied by Order dated October 31, 1996. This timely appeal followed.

Both Appellants present several issues for our review. Hyundai challenges the trial court's imposition of joint and several liability as to both compensatory and treble damages, and the trial court's award of treble damages where liability was based solely upon breach of warranty. McCafferty challenges the jury's finding of liability under the UTPCPL, as well as the trial court's damages calculation, award of attorney's fees, and its refusal to consider a cross-claim for indemnification. Both Appellants challenge the trial court's award of treble damages absent a finding of fraud, and the court's admission of evidence and jury charge regarding the Lemon Law. On appeal, Appellants again seek JNOV and/or a new trial.

■ When reviewing the propriety of an order denying JNOV, this Court must determine whether there was sufficient competent evidence to sustain the verdict. *Trude v. Martin,* 442 Pa.Super. 614, 623, 660 A.2d 626, 630 (1995). In making this determination, our scope of review is very narrow: all evidence and all reasonable inferences drawn therefrom must be considered in the light most favorable to the verdict winner. *Gregg v. Lindsay,* 437 Pa.Super. 206, 209, 649 A.2d 935, 937 (1994). JNOV may be granted only in a clear case where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Pirozzi v. Penske Olds–Cadillac–GMC,* 413 Pa.Super. 308, 312, 605 A.2d 373, 375, *allocatur denied,* 532 Pa. 665, 616 A.2d 985 (1992). Therefore, we will reverse the trial court's ruling on a motion for JNOV only if there is a clear abuse of discretion or error of law that controlled the outcome of the case. *Scott v. Southwestern Mut. Fire Ass'n.,* 436 Pa.Super. 242, 247, 647 A.2d 587, 590 (1994).

■ Similarly, our standard of review for an order denying a motion for a new trial is limited to determining whether the trial court acted capriciously, palpably abused its discretion, or committed an error of law which controlled the outcome. *Brown v. Philadelphia College of Osteopathic Medicine,* 449 Pa.Super. 667, 682, 674 A.2d 1130, 1138, (1996). A new trial will be awarded only when the verdict is so contrary to the evidence as to "shock one's sense of justice." *Neison v. Hines,* 539 Pa. 516, 520, 653 A.2d 634, 636 (1995). As a result, if support for the trial court's decision is found in the record, its order denying the motion for a new trial must be affirmed. *Randt v. Abex Corp.,* 448 Pa.Super. 224, 231, 671 A.2d 228, 232 (1996).

After a thorough review of the record, the briefs of the parties, as well as applicable caselaw and statutory authority, we conclude that the trial court has sufficiently addressed and properly disposed of Appellants' issues regarding UTPCPL liability, attorney's fees, damages calculations, joint and several liability as to compensatory damages, and indemnification. With respect to those issues, we agree with the trial court's conclusion that neither JNOV nor a new trial is warranted, and, therefore, affirm on the basis of the well-reasoned trial court Opinion.[1] However, Appellants' claims regarding the award of treble damages and the trial court's references to the Lemon Law warrant further discussion.

Appellants contend that the court erred both by admitting evidence and instructing the jury regarding provisions of the Lemon Law. Appellants argue that since nonsuit was granted on Appellees' Lemon Law claim, the court's admission of evidence and instruction detailing provisions of the Law were inappropriate, prejudicial, and warrant a new trial. (Hyundai Brief at 20–27; McCafferty Brief at 26–30). We disagree and find that the

---

1. *See* Trial Ct. Op. at 6, 7–9.

court acted properly within its discretion when it "allowed references to portions of the Lemon Law in order to give the jury a basis for a potential finding of fraud. In other words, testimony and instructions were given regarding the Lemon Law so that the jury could achieve an understanding of the kinds of acts or behavior that would constitute fraud." (Trial Ct. Op. at 11).

■ It is well-settled that the admissibility of evidence rests within the sound discretion of the trial court; a new trial will not be granted unless there has been a manifest abuse of this discretion in admitting the challenged evidence. *Berman v. Radnor Rolls, Inc.,* 374 Pa.Super. 118, 126, 542 A.2d 525, 538 (1988). With respect to jury instructions, we note that the trial court is responsible for charging the jury on all relevant issues. *Clayton v. Sabeh,* 406 Pa.Super. 335, 338, 594 A.2d 365, 366 (1991). When reviewing a challenge to a jury charge, we must examine the trial court's instruction in its entirety, against the background of all evidence presented, to determine whether error was committed. *Sweitzer v. Dempster Sys.,* 372 Pa.Super. 449, 453, 539 A.2d 880, 882 (1988). A jury charge is erroneous if the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury rather than clarify a material issue. *Stewart v. Motts,* 539 Pa. 596, 606, 654 A.2d 535, 540 (1995). Therefore, "[a] charge will be found adequate unless 'the issues are not made clear to the jury or the jury was palpably mislead by what the trial judge said....'" *Id.* (citation omitted).

To assert a cause of action under the Lemon Law, the vehicle at issue must be purchased and registered in Pennsylvania. 73 P.S. §§ 1952, 1958. In the instant case, although Appellees' vehicle was purchased from McCafferty in Pennsylvania, it was registered in New Jersey, and, therefore, the trial court appropriately entered nonsuit on Appellees' Lemon Law claims. Although Appellees were not entitled to any remedy under the Lemon Law, the trial court permitted testimony regarding its provisions through the cross-examination of Appellants' witness, McCafferty service manager, Richard DeFeo. Mr. DeFeo testified that he was familiar with Pennsylvania's Lemon Law and its provision which states that:

[t]he manufacturer or dealer shall provide to the purchaser each time the purchaser's vehicle is returned from being serviced or repaired a fully itemized statement indicating all work performed on said vehicle including, but not limited to, parts and labor. It shall be the duty of a dealer to notify the manufacturer of the existence of a nonconformity within seven days of the delivery by a purchaser of a vehicle subject to a nonconformity when it is delivered to the same dealer for the second time for repair of the same nonconformity.

73 P.S. § 1957 (requiring itemized repair statement). Following Appellants' inquiry into this provision, Mr. DeFeo admitted that Appellees did not receive a repair order after McCafferty's July 15, 1988 repair. (N.T. 1/26/96 at 84–85).

The court also permitted Appellees' counsel to delve into other provisions of the Lemon Law, including the provision which provides for the resale of a nonconforming vehicle. (*Id.* at 70–72, 76). In response to an objection by Appellants' counsel, the court stated that it would "instruct the jury what the circumstances of the Lemon Law's application in this case may be." (*Id.* at 76).

■ Indeed, in its instruction to the jury, the court explained that although the jury heard references to the Lemon Law and its provisions, Appellants were not entitled to any legal relief under that Law because their vehicle was registered in New Jersey. (N.T. 1/29/96 at 134). In fact, the court repeatedly stressed that Appellants were not entitled to relief under the Lemon Law. (*Id.* at 133–134). The court stated, however, that the Lemon Law provisions were discussed "so that you may be aware of some of the background of events which may or may not have occurred in the course of the treatment of this vehicle." (*Id.* at 134).

After briefly discussing the Lemon Law provisions, the court reviewed the special jury interrogatories. One such interrogatory asked the jury to determine whether either "defendant engage[d] in any fraudulent conduct which created a likelihood of confusion

or misunderstandings." (*Id.* at 137). The court stated that "I am satisfied that the only specific issue of alleged fraudulent conduct which is urged in this case has to do with the failure to submit or create a written receipt for labor and materials involved in one of the several repair attempts to this vehicle." (*Id.* at 138–39). Further, the court specifically instructed that "[i]n order for a defendant to have violated the Uniform Trade Practices Law [UTPCPL], there would have to be a finding by you that the failure to give the repair order … was an intentional act on the part of McCafferty, done for the purpose of defrauding the plaintiffs." (*Id.* at 140). Appropriately, the court defined fraud in the context of a failure to disclose material facts, stating that "the test of whether a failure to disclose material facts constitutes fraud is existence of a duty, legal or equitable, arising from the relation of the parties. Failure to disclose a material fact with intent to mislead or defraud under such circumstances, is equivalent to an actual fraudulent conceal-ment." (*Id.* at 160; *see also* 138, 159). The court also emphasized that such conduct, to constitute fraud, must be intentional. (*Id.* at 137–38).

In their challenge to the Lemon Law testi-mony and jury instruction, Appellants quote brief passages which are taken out of context from the court's charge. Upon further re-view of the *entire* charge, however, it is clear that the court properly admitted evidence of Lemon Law provisions and, as illustrated above, appropriately limited the jury's use of such evidence.

A violation of the Lemon Law constitutes a violation of the UTPCPL. 73 P.S. § 1961. Section two of the UTPCPL lists sixteen specific, prohibited activities which are de-fined as unfair methods of competition or deceptive acts or practices, and include "[e]n-gaging in any … fraudulent conduct which created the likelihood of confusion or of mis-understanding." 73 P.S. § 201–2(4)(xvii). In accordance with the *court's* definition, before the jury could find that Appellants acted fraudulently in failing to give Appellees a repair receipt, they must first find that Ap-pellants were under a duty to give such a receipt. Discussion of the Lemon Law was

appropriate to inform the jury that a receipt is required in certain circumstances, and, even though Appellees were not entitled to legal relief under the Lemon Law, the failure to give them a receipt might, nonetheless, be considered fraudulent. As such fraudulent behavior would be actionable under the UTPCPL, the court was correct in stating that "the standards and requirements in the Lemon Law cannot be ignored by you as you consider all the circumstances." (N.T. 1/29/96 at 161). Accordingly, we find that the trial court did not err by admitting evi-dence or charging the jury on provisions of the Lemon Law.

Assuming, *arguendo*, that the ad-mission of the challenged testimony and sub-sequent jury charge were erroneous, we note that error alone does not mandate a new trial. *Summit Fasteners, Inc. v. Harleys-ville Nat'l Bank & Trust Co.*, 410 Pa.Super. 56, 62, 599 A.2d 203, 206 (1991), *allocatur denied*, 530 Pa. 633, 606 A.2d 902 (1992). Rather, to constitute reversible error, a rul-ing on evidence or a jury instruction must not only be erroneous, but it must also be harmful or prejudicial to the complaining party. *Id.; Hart v. W.H. Stewart, Inc.*, 523 Pa. 13, 16, 564 A.2d 1250, 1252 (1989)(stating evidentiary ruling which does not affect the verdict will not provide basis for disturbing jury's judgment). In the instant case, the jury specifically found that neither Hyundai nor McCafferty acted in a fraudulent man-ner. (Interrogatories to the Jury # 4). Thus, it is clear that the jury's finding belies Appellants' mere allegation that the allegedly erroneous instruction and admission of evi-dence "may have contributed to the verdict." (Hyundai's Brief at 30).

Finally, we address Appellants' claims re-garding treble damages. Under the UTPCPL,

> [a]ny person who purchases … goods … primarily for personal, family or household purposes and thereby suffers any ascer-tainable loss of money or property, real or personal, as a result of the use or employ-ment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred

dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained ... and may provide such additional relief as it deems necessary or proper.

73 P.S. § 201–9.2(a)(footnotes omitted). Appellants argue that as in the instant case, where liability under UTPCPL is based solely upon a breach of warranty,[2] a court may not award treble damages absent a finding of egregious, fraudulent conduct. (Hyundai's Brief at 16; McCafferty's Brief at 26). Although the trial court agreed with this assessment of the law, it found that Appellants' conduct was indeed "reckless," and, therefore, exercised its discretion under the UTPCPL and awarded treble damages. For the reasons set forth below, we find no abuse of that discretion.

The purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices. *Burke v. Yingling,* 446 Pa.Super. 16, 22, 666 A.2d 288, 291 (1995). Therefore, it is not surprising that most of the subsections enumerated under the Act's heading of "unfair or deceptive acts or practices" involve situations such as: passing off goods or services as those of another; disparaging the goods, services, or business of another by false or misleading representation of fact; advertising goods or services with intent not to sell as advertised; representing that goods are original or new if they are deteriorated, altered, or second-hand; or engaging in "any other fraudulent conduct." *See* 73 P.S. § 201–2(4)(i), (vi), (viii), (ix), (xvii).

Unlike most of the prohibited acts under the UTPCPL which "sound in tort/trespass," however, Appellants contend that the provision which they were found guilty of violating "sounds strictly in contract/assumpsit in the nature of a breach of warranty." (Hyundai's Brief at 12). Therefore, since treble dam-

ages are punitive in nature and, thus, not typically awarded in contract actions, Appellants argue that the court must first find "outrageous" or "egregious" conduct before an award of treble damages is appropriate for a breach of contract or warranty under the UTPCPL. (Hyundai's Brief at 14, 16–19; McCafferty's Brief at 26). Appellants conclude that since the jury specifically found that neither defendant engaged in any fraudulent conduct, and there was no evidence of any outrageous or egregious conduct presented at trial, the trial court's award of treble damages was erroneous. (*Id.*)

By advancing this argument, Appellants essentially urge this Court to adopt the reasoning of the federal district courts which have interpreted the UTPCPL to require a finding of "outrageous conduct" before awarding treble damages for breach of contract or warranty under the UTPCPL. *See McClelland v. Hyundai Motor America,* 851 F.Supp. 680, 681 (E.D.Pa.1994)(refusing to award treble damages under UTPCPL based upon manufacturer's failure to comply with warranty where defendant did not act "outrageously"); *Smith v. Chrysler Motors Corp.,* No. 89–2898, 1990 WL 65700, at *4–5, 1990 U.S. Dist. LEXIS 5963, at *12–14 (E.D.Pa. May 15, 1990)(denying motion for treble damages in UTPCPL breach of warranty claim where no evidence of bad faith was presented necessitating trigger of punitive damages; "court does not find that the defendant acted outrageously in failing to repair the vehicle on each of the seven opportunities to do so.").

In *Smith,* the jury found the defendant-automobile manufacturer in violation of the UTPCPL for breach of warranty arising from defects in an automobile purchased by the plaintiff. *Smith,* 1990 WL 65700, at *4, 1990 U.S. Dist. LEXIS 5963, at *10. Based on this finding, the plaintiff asked the court to exercise its discretion and award treble

---

**2.** According to the special interrogatories, the jury found that the start problem in Appellees' vehicle constituted a failure to conform to the manufacturer's warranty, and McCafferty performed repairs that "were of a nature or quality inferior to or below the standard of that agreed to in writing." (Interrogatories to the Jury # 1, 5). The jury's findings provided a basis for liability under UTPCPL, 73 P.S. § 201–2(4), subsec-

tions (xiv)("Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made"), and (xvi)("Making repairs, improvements or replacements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing").

damages under § 201–9.2(a). *Id.* at *4, 1990 U.S. Dist. LEXIS 5963, at *11. In refusing to award treble damages, the court stated that "[a]lthough a breach of warranty appears to be a per se violation of the Unfair Trade Practices Law [UTPCPL], the plaintiff is not automatically entitled to treble damages" since such an award is within the discretion of the trial court. *Id.* at *4, 1990 U.S. Dist. LEXIS 5963, at *12. The court further reasoned that "[a]lthough not generally available for breach of contract, the court agrees with defendant that the treble damages provision of the Unfair Trade Practices Law [UTPCPL] is essentially akin to an award of punitive damages, [which], in Pennsylvania, . . . are awardable when the defendant has exhibited outrageous conduct." *Id.* The district court ultimately concluded, however, that the defendant's behavior was not "outrageous," and refused to award treble damages. *Id.*

At the outset, we remind Appellants in the instant case that this Court is not bound by any federal interpretation of Pennsylvania statutes. Although we acknowledge that, unlike most of the UTPCPL provisions, the provisions violated by Appellants were solely breach of contract/warranty, it is clear that the UTPCPL does not differentiate between "tort-like" violations and "contract-like" violations; rather, all prohibited "unfair or deceptive acts or practices" are listed together in section § 201–2(4)(i)–(xvii).

■ It is also clear from a plain reading of the statute that upon the commission of a prohibited act in *any* of the enumerated subsections in § 201–2(4), the trial court "may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper." 73 P.S. § 201–9.2(a). The statute does not *explicitly* require a finding of "outrageous conduct" before a trial court may award treble damages for a breach of warranty violation under the UTPCPL. Rather, without providing further guidance, the legislature has vested the trial court with considerable discretion in the imposition of treble damages. Although Appellants would prefer otherwise, statutory construction is within the power of the legislature, and it is, therefore, beyond the jurisdiction of this Court to reformulate the UTPCPL by inserting language which differentiates among prohibitions and imposes specific prerequisites for recovery. Therefore, since the legislature has not provided for a specific finding of outrageous conduct before an award of treble damages for breach of contract/warranty may be imposed, we must trust that the courts will be guided by the well-established, general principles of law governing punitive damages when exercising discretion under the UTPCPL.

■ It is undisputed that the imposition of exemplary or treble damages is essentially punitive in nature. The law of Pennsylvania clearly provides, however, that punitive damages are not recoverable in an action solely based upon breach of contract. *Thorsen v. Iron and Glass Bank,* 328 Pa.Super. 135, 143, 476 A.2d 928, 932 (1984). *See Standard Pipeline Coating Co. v. Solomon & Teslovich, Inc.,* 344 Pa.Super. 367, 375, 496 A.2d 840, 844 (1985)(holding "punitive damages will not be assessed for mere breach of contractual duties, where no recognized trespass cause of action . . . arose out of the same transaction"). Whereas in contract actions, damages are awarded to compensate an injured party for the loss suffered due to the breach, *Empire Properties, Inc. v. Equireal Inc.,* 449 Pa.Super. 476, 490, 674 A.2d 297, 304 (1996), the purpose of punitive damages is to punish outrageous and egregious conduct done in a reckless disregard of another's rights; it serves a deterrence as well as a punishment function. *Schecter v. Watkins,* 395 Pa.Super. 363, 383–84, 577 A.2d 585, 595 (1990). Therefore, under the law of this Commonwealth, a court may award punitive damages only if an actor's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others. *SHV Coal, Inc. v. Continental Grain Co.,* 526 Pa. 489, 493, 587 A.2d 702, 704 (1991); *Rizzo v. Haines,* 520 Pa. 484, 555 A.2d 58 (1989). It is precisely these well-grounded principles of law that we expect the trial courts will follow when, as in the instant case, exercising discretion and

awarding treble damages for breach of contract/warranty under the UTPCPL.

■ Indeed, in the instant case, it is clear that the trial court properly applied the law as outlined above and concluded that Appellants' actions were "recklessly indifferent," thus warranting treble damages. The trial court stated that there was "more than enough material in the record to support this finding." (Trial Ct. Op. at 10). We agree.

> For example, neither defendant took the time to discover successfully the real problem with the car until one day before trial. Prior to this time, the car sat in a storage lot for nearly 6 1/2 years with each defendant maintaining that the car was fixed. All the while, the plaintiffs made their monthly payments on a new car they could not use. In the actual attempts to fix the car, little money or time was spent [by Appellants]. Once the problem was discovered, both sides continued to blame the other side, trying to escape blame. McCafferty actually entered a counterclaim against the plaintiffs for storage costs and maintained the claim even after they had discovered that the car was indeed in need of repair and unsuitable for use.

(Trial Ct. Op. at 10). "[O]bviously neither of these defendants believed their customer; and, therefore, they never spent the requisite time and attention to find the defect until one day before trial, and six years after the sale." (*Id.* at 6).

After reviewing the record, we agree with the trial court's conclusion and, therefore, find that it did not abuse its discretion by awarding treble damages for Appellants' breach of contract/warranty under the UTPCPL.

Order affirmed.