David J. MEYER, Dallas Berry, Charles J. Brown, Jeremy Lee Fox, Martin Gorecki, Anthony J. Hollibaugh, Lisa L. Salyers, Rochell Sykes, Joseph W. Vucick, David L. Wigley, Dennis W. Woodley, Chris Mack and Tammy Muslo

v.

### COMMUNITY COLLEGE OF BEAVER COUNTY, Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 15, 2008.

Decided Feb. 11, 2009.

Anthony G. Sanchez, Pittsburgh, for appellant.

Mark Fischer and Thomas S. Anderson, Pittsburgh, for appellees.

BEFORE: LEADBETTER, President Judge, and McGINLEY, SMITH-RIBNER, PELLEGRINI, SIMPSON, LEAVITT and BUTLER, Judges.

OPINION BY Judge SIMPSON.

In this interlocutory appeal by permission, we consider the extent to which a community college, a local agency, may be liable under the Unfair Trade Practices and Consumer Protection Law (CPL)[1] for statutory damages, including possible treble damages.

In particular, the Community College of Beaver County (the College) appeals an order of the Court of Common Pleas of Beaver County (trial court) denying its motion for partial summary judgment. A group of former students (Plaintiffs)[2] en-

---

**1.** Act of December 16, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201.1–201–9.3.

**2.** Plaintiffs are David J. Meyer, Dallas Berry, Charles J. Brown, Jeremy Lee Fox, Martin

Gorecki, Anthony J. Hollibaugh, Lisa L. Salyers, Rochell Sykes, Joseph W. Vucick, David L. Wigley, Dennis W. Woodley, Chris Mack and Tammy Muslo. This appeal was argued

rolled in the College's police technology program (the Academy) during the 2001–02 academic year, brought a civil action against the College after the Academy lost its school certification under the Municipal Police Officers Education and Training Act (Training Act), 53 Pa.C.S. §§ 2161–70, informally known as "Act 120." In their amended complaint Plaintiffs allege breach of contract and breach of warranty, and various unfair or deceptive acts as defined in the CPL.

## I.

In May 2002, before Plaintiffs completed the Academy's course of study, the Pennsylvania Municipal Police Officers' Education and Training Commission (Training Commission) suspended the Academy's Act 120 certification. The Training Commission based the suspension on numerous violations, including the Academy's failure to accurately document student examination scores and the failure of Academy instructors to be properly certified to teach various classes. The Training Com-

mission officially revoked the Academy's Act 120 certification in August 2002.

Thereafter, Plaintiffs filed a complaint against the College that alleged as follows. In its 2000–01 [3] course catalog, the College expressly represented the Academy to be a Training Commission certified course of study. These express representations were made to induce, and did induce, Plaintiffs to enroll in the Academy. Plaintiffs paid tuition, attended the required courses and took examinations.

However, due to numerous violations of the Training Act and its regulations,[4] the Training Commission ultimately revoked the Academy's certification. As a result, the Training Commission disallowed most of the credits Plaintiffs earned at the Academy. Consequently, Plaintiffs must repeat virtually all of the Act 120 course requirements at another police academy and pay tuition.

In odd-numbered counts of their amended complaint titled "Breach of Contract and Warranty," each Plaintiff alleged the College breached contractual warranties.[5]

---

seriately with *Barr v. Community College of Beaver County*, —— A.2d ——, 2008 WL 5605724 (Pa.Cmwlth.2009). The only significant difference between the two cases is Plaintiffs here completed one half of their course of study; the *Barr* plaintiffs virtually completed the entire course of study.

3. Although Plaintiffs attended the Academy during the 2001–02 school year, the College provided them with 2000–01 catalogs. The College did not receive its 2001–02 catalogs until October 2001. *See* App. to the College's Br. in Supp. of Mot. for Summ. J., Tab 26 (Dep. of Harriet Ann Wallace at 3).

4. *See* 37 Pa.Code §§ 203.1–203.103.

5. As to their breach of contract and warranty claims, Plaintiffs allege, at Plaintiffs' First Amended Complaint at 11–12, Reproduced Record (R.R.) at 112–13 (emphasis added):

44. Each Plaintiff accepted the College's offer to obtain Act 120 certification and

entered into an agreement with the College to attend the Academy in exchange for the payment of agreed upon tuition.

45. The College agreed to provide each Plaintiff with the necessary course work, instruction and training, in a specified time frame, whereby each Plaintiff would be eligible for certification pursuant to Act 120 upon their successful completion of the Academy.

\* \* \*

51. The College breached its agreement with each Plaintiff, and its warranties and guaranties to each Plaintiff described herein, as follows:

(a) *By failing to provide the Plaintiffs with an Academy consistent with the requirements of Act 120;*

(b) *By failing to adequately supervise* its employees who were assigned to operate the Academy;

(c) *By failing to comply with various requirements of Act 120,* including recordkeeping curricular, grading, student eligi-

Alleged damages included loss of tuition; loss of income; and loss of job opportunities and the income associated therewith.

In even-numbered counts of their amended complaint titled "Consumer Protection Law," each Plaintiff alleged the purchase of education services constituted a transaction in "trade" or "commerce" as defined in Section 2(3) of the CPL and the College is a "person" as defined in Section 2(2) of the CPL. Plaintiffs further alleged the College engaged in unfair or deceptive conduct as defined in Sections 2(4)(ii), (iii),

(v), (vii), (xiv) and (xxi) of the CPL [6] in violation of Section 3 of the CPL, 73 P.S. § 201–3 (unfair methods of competition and unfair or deceptive acts or practices as defined in Section 2(4) of the CPL declared unlawful).[7] Plaintiffs alleged substantial economic losses as a result of the College's violations of the CPL. They also sought treble damages and an award of costs and attorney fees under Section 9.2 of the CPL.[8]

After the close of pleadings [9] and discovery, the College filed a motion for partial

bility, administrative and other certification requirements, as detailed in this Complaint.

(d) *By failing to provide the Plaintiffs with the required Act 120 course work*, instruction and training in the promised time frame;

(e) *By causing the [Training Commission], due to acts and omissions of the College, to suspend and then terminate the Academy's Act 120 certification* prior to the completion of all course work thereof;

(f) *By causing the [Training Commission], due to acts and omissions of the College, to disallow the overwhelming majority of the course work and credits completed by the Plaintiffs;*

(g) *By charging and collecting illegal and excessive tuition*, fees and costs; and,

(h) By committing the violations more fully detailed in this Complaint.

6. Section 2(4) of the CPL, 73 P.S. § 201–2(4) provides:

(4) **"Unfair methods of competition"** and **"unfair or deceptive acts or practices"** mean any one or more of the following:
. . . .
(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
(iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;
. . . .
(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a

sponsorship, approval, status, affiliation or connection that he does not have;
. . . .
(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;
. . . .
(xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;
. . . .
(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

7. In their original complaint, Plaintiffs also alleged the College engaged in unfair and deceptive debt collection practices prohibited by the Fair Credit Extension Uniformity Act (Fair Credit Act), Act of March 28, 2000, P.L. 23, 73 P.S. §§ 2270.1–2270.6. As discussed in the following note, these claims were subsequently dismissed and are not before us now.

8. Section 9.2 of the CPL was added by the Act of November 24, 1976, P.L. 1166, *as amended*, 73 P.S. § 201–9.2.

9. In response to Plaintiffs' original complaint, the College filed preliminary objections. Among other arguments, the College asserted it is a local government agency entitled to immunity under 42 Pa.C.S. § 8541 from CPL and Fair Credit Act claims. Initially, the trial court noted a breach of contract action may lie where a private school asserts it is accredited to give a certain degree and it is later discovered this is false. *Cavaliere v. Duff's*

summary judgment requesting judgment on Plaintiffs' CPL and breach of warranty claims. As to the breach of warranty claims, the College argued that Plaintiffs failed to offer sufficient proof to support their claims. Relevant to this appeal, the College argued the CPL does not apply to community colleges and, as a local agency, a community college is immune from CPL claims under 42 Pa.C.S. § 8541.

Ultimately, the trial court denied the College's motion for partial summary judgment. The trial court rejected the College's assertion the CPL does not apply to community colleges. It further rejected the College's immunity defense on the basis that some of Plaintiffs' CPL claims sound in contract, not in tort.

The trial court also cited several cases in support of its decision. *See Cavaliere v. Duff's Business Institute,* 413 Pa.Super. 357, 605 A.2d 397 (1992) (breach of contract action may lie in case where school falsely asserts it is accredited or licensed to give a certain degree); *Swartley v. Hoffner,* 734 A.2d 915 (Pa.Super.1999) (relationship between private college and student is contractual in nature; student may bring cause of action for breach of contract where college ignores or violates written contract); *Beljan v. Bucks County Cmty. Coll.,* 11 Pa. D. & C.3d 786 (C.P. Bucks Co. 1979) (plaintiff, a nursing student, failed to set forth a cause of action against a community college for breach of contract based on the school's alleged failure to implement rules and regulations promulgated by the State Board of Nursing Examiners).[10] The trial court explained:

> The common denominator of all these cases is the allegation that the Defendant-school committed a breach of any of the terms and conditions of the catalog of the Defendant.
>
> [The College] alleges in its motion of summary judgment that:
>
> 1. There was no college catalog for the school year of 2001–2002 upon which the Plaintiffs could rely upon;

*Business Institute,* 413 Pa.Super. 357, 605 A.2d 397 (1992). Citing *Johnson v. Hyundai Motor America,* 698 A.2d 631 (Pa.Super.1997), the trial court overruled the College's objections to Plaintiffs' claims under Sections 2(4)(ii), (iii) and (xiv) of the CPL on the basis the claims sounded in breach of contract and/or breach of warranty. The trial court noted it is possible to pursue a claim sounding in breach of contract and warranty under the CPL. *Id.* Conversely, the trial court dismissed Plaintiffs' claims under Sections 2(4)(v), (vii) and (xxi) of the CPL, as well their Fair Credit Act claims, as sounding in misrepresentation and fraud.

Thereafter, Plaintiffs filed an amended complaint again alleging breach of contract, breach of warranty, and CPL violations. They also added several new plaintiffs.

The College responded with preliminary objections asserting Plaintiffs again based their claims on fraud and improperly joined additional plaintiffs. It again asserted governmental immunity from Plaintiffs' CPL claims. The trial court overruled the College's objection that Plaintiffs again alleged fraud, noting Plaintiffs no longer stated a cause of action for fraud and thus the College's tort immunity is not compromised. However, the trial court granted the College's objection to the additional plaintiffs.

Thereafter, the College filed an answer and new matter denying Plaintiffs' allegations. In its new matter, the College asserted various claims and defenses including failure to state a cause of action, immunity, and statute of limitations.

10. The trial court further cited an Ohio case, *Behrend v. State,* 55 Ohio App.2d 135, 379 N.E.2d 617 (1977), *appeal after remand,* 1984 WL 7633 (Ohio Ct.App. 10th Dist. Franklin County 1984), as being similar. In *Behrend,* the Ohio Appeals Court, reversing the court of claims for the fourth time, found an implied contract existed between Ohio University and its architectural students that the students would be provided architectural training. Because the school decided to discontinue the program, the court determined the contracts should either be fulfilled or damages awarded.

2. The 2001–2002 catalog contains no guarantees or warranties;

3. [Plaintiffs] did not rely upon any representation contained in the college catalog.

Trial Ct. Slip Op., 05/12/08 at 4–5.

In denying the College's motion for partial summary judgment, the trial court reasoned (with emphasis added):

The party opposing a motion for summary judgment must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. *In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist.*

Our courts have been reluctant to recognize claims of educational malpractice in the academic environment but they have recognized that a contract exists between a student and a college. *The courts have held that in general, the basic legal relationship between a student and a private university or college is contractual in nature. The catalogs, bulletins, circulars, and regulations of the institution made available to the matriculant become part of the contract. Questions of discipline, academic matters, and tuition and scholarship disputes have been addressed by courts and resolved on contract principles.* At the same time, however, courts have been reluctant to apply strict contract concepts to the unique relationship that exists between students and universities or colleges.

*Id.* at 5.

In response to the denial of its motion, the College filed a motion to amend the order to certify for an interlocutory appeal of the following two issues: whether the College is a "person" as defined in Section 2(2) of the CPL inasmuch as a community college, a distinct public entity, is not specifically identified as a person in the CPL; and whether the College is subject to prosecution under the CPL regardless of tort immunity defenses afforded a local agency under 42 Pa.C.S. § 8541. The trial court granted the College's motion. This Court granted the appeal.[11]

## II.

### A.

The College first asserts it is not included in the CPL's definition of a "person" and thus not subject to liability under the CPL. Section 2(2) of the CPL defines a "person" as follows (with emphasis added):

**"Person"** means natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, *and any other legal entities.*

The parties' interesting arguments notwithstanding, we decline to decide whether the College is "any other legal entity" so as to come under the definition of "Person" subject to private action provisions of the CPL. This is because we conclude the College is immune from liability for statutory damages under the CPL, as discussed more fully below.

### B.

■ The College asserts the trial court erred in concluding that claims under the CPL may sound either in tort or in contract and that the College is subject to liability under the contract branch of the

11. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion. *Kincel v. Dep't of Transp.*, 867 A.2d 758 (Pa. Cmwlth.2005).

CPL regardless of tort immunity afforded a local agency under 42 Pa.C.S. § 8541. As support, the College cites *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425 (2004), where the Supreme Court acknowledged in a footnote that the plaintiff in that case conceded the Pittsburgh Sports and Exhibition Authority, as a governmental agency, was immune from CPL claims of negligent misrepresentation.

The College also cites *Matarazzo v. Millers Mutual Group, Inc.*, 927 A.2d 689 (Pa.Cmwlth.2007), where homeowners sued a municipal authority which did not shut off the water to their vacant house, causing the pipes to freeze and burst. The homeowners asserted promissory estoppel, a cause of action to which governmental immunity does not apply. However, we determined the homeowners' action to be a negligence action asserting a breach of a duty of care to provide service in a competent and careful manner. We further determined the homeowners' action did not fall within any of the eight exceptions to governmental immunity in 42 Pa.C.S. § 8542(b). Exceptions to immunity are strictly construed. *Finn v. City of Philadelphia*, 541 Pa. 596, 664 A.2d 1342 (1995). In *Matarazzo*, we noted Pennsylvania courts consistently hold a plaintiff may not avoid the defense of governmental immunity by couching a claim for the recovery of tort damages under a contract theory. *See also Bendas v. Upper Saucon Twp.*, 127 Pa.Cmwlth. 378, 561 A.2d 1290 (1989) (same).

Here, the College asserts, Plaintiffs merely converted their tort claims to breach of contract claims. The College also cites our decision in *Yocca*, 806 A.2d 936 (Pa.Cmwlth.2002) *rev'd on other grounds*, 578 Pa. 479, 854 A.2d 425 (2004), wherein we recognized this Court employs a "misfeasance/nonfeasance" test for deter-

mining whether an action sounds in tort or in contract. "If there is 'misfeasance,' there is an improper performance of the contract in the course of which breaches a duty imposed by law as a matter of social policy. In such instances, the 'gist' of the plaintiff's action sounds in tort and the contract itself is collateral to the cause of action." *Id.* at 944. "On the other hand, if there is 'nonfeasance,' the wrong attributed to the defendant is solely a breach of the defendant's duty to perform under the terms of the contract. In such instances, the 'gist' of the plaintiff's action sounds in contract, and the plaintiff would not have a cause of action but for the contract." *Id.*

The College additionally cites *Johnson v. Hyundai Motor America*, 698 A.2d 631 (Pa.Super.1997), for the proposition that the CPL does not distinguish between "tort-like" and "contract-like" violations. The College asserts that as a consequence, Plaintiffs' CPL claims cannot be considered breach of contract and breach of warranty for purposes of governmental immunity.

Plaintiffs counter the College is not immune from CPL claims under 42 Pa.C.S. § 8541. In support, Plaintiffs cite, among other decisions, *Gabriel v. O'Hara*, 368 Pa.Super. 383, 534 A.2d 488 (1987). There, the Superior Court recognized the CPL is of a "*sui generis* nature" and "encompasses an array of practices which might be analogized to passing off, misappropriation, trademark infringement, disparagement, false advertising, fraud, breach of contract, and breach of warranty." *Id.* at 494 (footnotes omitted). In *Gabriel* the Court further noted "the [CPL] embraces actionable conduct which sounds in assumpsit as well as trespass and which parallel actions upon contracts as well as those arising in tort." *Id.* at 495. Plaintiffs argue if the College's position were correct, all CPL claims would be

tort claims subject to the two-year statute of limitations for torts. However, in *Gabriel*, the Superior Court applied the six-year catch-all limitation period in Section 5527 of the Judicial Code, 42 Pa.C.S. § 5527.

Plaintiffs also contend the College's reliance on the Supreme Court's decision in *Yocca* is misplaced because the plaintiffs therein withdrew their CPL claims when the defendant asserted immunity.

Plaintiffs further argue treble damages under the CPL are available for breach of contract claims because obligations under the CPL are governed by statutory, not common law. They assert a breach of warranty under CPL § 2(4)(xiv) may constitute an unfair trade practice and support an award of treble damages. However, an award of treble damages does not change a contract claim into a tort claim. Finally, Plaintiffs assert the "gist of the action" doctrine and the "misfeasance/nonfeasance" tests discussed in this Court's *Yocca* decision do not render their CPL claims a tort action.

■ Initially, we note a community college, as a tax supported institution created by local government units, is a local agency for purposes of governmental immunity. *Cmty. Coll. Of Allegheny County v. Seibert*, 144 Pa.Cmwlth. 616, 601 A.2d 1348 (1992), *aff'd*, 533 Pa. 314, 622 A.2d 285 (1993). Local agencies are generally not liable for damages on account of an injury to a person or property. 42 Pa.C.S. § 8541.

Nevertheless, local agencies may be held liable for damages to an injured party where the "*damages would be recoverable under ... a statute* creating a cause of action if the injury were caused by a person not having available a defense under [Section 8541] ... *and ... the injury was caused by the negligent acts of the local agency* or an employe thereof acting within the scope of his office or duties with respect to one of the categories listed in [42 Pa. C.S, § 8542(b), relating to exceptions to immunity]...." 42 Pa.C.S. § 8542(a) (emphasis added).

Stated differently, a local agency may be liable for damages under a statute creating a cause of action if liability is predicated on a negligent act within one of the eight categories of exceptions to immunity. Consequently, to be recoverable, Plaintiffs' CPL private action claims against a local agency must arise from a negligent act within one of the eight exceptions to governmental immunity in 42 Pa.C.S. § 8542(b) (negligent acts involving: (1) vehicle liability; (2) care, custody or control of personal property of others; (3) real property, trees; (4) traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; or (8) care, custody and control of animals).

Here, liability under the CPL is clearly not predicated on a negligent act within one of the eight categories of exceptions to immunity.[12] No one asserts otherwise.

---

12. In their amended complaint, Plaintiffs alleged the College violated the CPL in the following manner:

> 56. In connection with the sale of its educational services and collection of tuition, fees and costs related thereto, the College committed various *unfair and deceptive acts* and practices in violation of the CPL, including, but not limited to:
> (a) *Representing*, warranting and guaranteeing in writing that the Academy was in compliance with Act 120 when in fact it was not;
> (b) *Representing* that the Plaintiffs would be eligible for certification under Act 120 upon completion of the Academy, when they would not be eligible;
> (c) *Misrepresenting* the nature and qualifications of the Academy;
> (d) Making the *material representations* described in Paragraphs 3 through 51 of this Complaint; and

Consequently, the College, as a local agency, is not liable for statutory damages on account of any injury to a Plaintiff's person or property interests; rather, it retains immunity. 42 Pa.C.S. § 8541. Where, as here, statutory damages are involved, it does not matter whether the statutory claims are parallel to contract claims or similar to tort claims. Rather, immunity from statutory damages is only waived for negligent acts within the exceptions enumerated in 42 Pa.C.S. § 8542(b).

Similarly, the College is not liable for treble damages sought by each Plaintiff pursuant to Section 9.2(a) of the CPL.[13] Treble damages under the CPL are akin to punitive or exemplary damages. *Schwartz v. Rockey*, 593 Pa. 536, 932 A.2d 885 (2007) (the trebling of damages under the CPL has strong punitive dynamic); *id.* at 561–62, 932 A.2d at 901 (Cappy, C.J., concurring and dissenting) (treble damages under the CPL are essentially punitive in nature); *Skurnowicz v. Lucci*, 798 A.2d 788 (Pa.Super.2002) (CPL gives trial court discretion to award treble damages,

which are punitive in nature); *Johnson* (imposition of exemplary or treble damages is essentially punitive in nature). An award of treble damages under the CPL should be supported by the presence of intentional or reckless, wrongful conduct, and should be in furtherance of the remedial purposes of the statute. *Schwartz.*

However, it is clear that immunity is not waived for claims against a local agency for intentional or reckless conduct, only for certain negligent conduct. 42 Pa.C.S. § 8542(a)(2). Thus, the College retains immunity for the types of conduct needed to support an award of treble damages under the CPL. This conclusion is consistent with decisions holding that punitive damages cannot be awarded against a local agency. *Westmoreland County Indus. Dev. Auth. v. Allegheny County Bd. of Prop. Assessment, Appeals and Review*, 723 A.2d 1084 (Pa.Cmwlth.1999); *see also Feingold v. Se. Pa. Transp. Auth.*, 512 Pa. 567, 517 A.2d 1270 (1986) (punitive dam-

---

(e) *Oppressing and abusing* Plaintiffs by charging and collecting unauthorized and illegal fees, costs, expenses and tuition.

57. Each Plaintiff relied upon the various warranties and *misrepresentations* of the College in entering their agreements with the College and in continuing to make payments to the College.

58. The College's *unfair and deceptive conduct* (a) constituted untrue representations of the approval, characteristics, certifications, sponsorships, affiliations, uses and benefits of the College's educational services; (b) constituted untrue representations that the Academy was of a particular standard or quality; (c) caused confusion and misunderstanding as to the Academy's certification and approval; (d) constituted a failure to comply with the terms of a written guarantee or warranty; and (e) constituted deceptive conduct which created a likelihood of confusion and misunderstanding—all within the meaning of [Section 3 of the CPL] and [Sections 2(4)(ii), (iii), (v), (vii), (xiv) and (xxi) of the CPL].

Pls.' First Am. Compl. at 13, R.R. at 114 (emphasis added).

13. Section 9.2(a) of the CPL, 73 P.S. § 201.902(a) provides (with emphasis added):

Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. *The court may, in its discretion, award up to three times the actual damages sustained,* but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. *The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.*

ages not recoverable against a Commonwealth agency).

We specifically decline the invitation of the Plaintiffs and the trial court to analogize CPL claims to common law torts or common law contract claims and treat them as such, for several reasons. First and foremost, the plain language of the CPL does not differentiate between "tort-like" violations and "contract-like" violations. *Johnson.* Second, based on concerns for inconsistent results, our courts refrain from analyzing each prohibited act under the CPL separately; rather, our courts recognize the unique nature of liability under the CPL and strive to treat all prohibited acts uniformly. *Id.*; *Gabriel* (in order to eliminate aimless searching for time limits within which to bring actions under CPL, six-year statute of limitations applied to private actions based on all prohibited acts, whether similar to common law tort or similar to common law contract claim).

Third, while true that the acts upon which a common law breach of warranty claim is based may also support a private action claim under the CPL, the consequences are vastly different. These different consequences include possible liability for treble damages and attorney fees. These different consequences also support a different outcome between common law and statutory claims. Fourth, as discussed above, the waiver of immunity for statutory damages contains no direction to attempt a common law analogy; instead, the immunity waiver focuses on whether the injury was caused by negligent acts within the enumerated exceptions. 42 Pa. C.S. § 8542(a)(2).

In so holding, we stress that our decision is restricted to the counts of Plaintiffs' First Amended Complaint setting forth their statutory claims under the CPL. Plaintiffs' common law breach of warranty claims are not challenged in this interlocutory appeal. We note, however, that punitive damages are not usually recoverable in a breach of contract action. *Thorsen v. Iron and Glass Bank*, 328 Pa.Super. 135, 476 A.2d 928 (1984). We also refrain from deciding the status of other remedies provided by the CPL because such inquiries are not necessary for the disposition of this appeal.

The record supports no criticism of the respected trial court in this case, given its careful decision making at early stages of litigation. Nevertheless, based on our review, we hold Plaintiffs' remaining CPL private action claims are barred by governmental immunity under 42 Pa.C.S. § 8541. As a result, the College is entitled to partial summary judgment on Plaintiffs' CPL claims as a matter of law.

Judge BUTLER dissents.

### ORDER

AND NOW, this 11th day of February, 2009, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of Beaver County in the above-captioned matter is **REVERSED** insofar as it relates to private action claims under the Unfair Trade Practices and Consumer Protection Law, and **PARTIAL SUMMARY JUDGMENT** is entered in favor of the Community College of Beaver County and against Appellees on private action claims under the Unfair Trade Practices and Consumer Protection Law.

Jurisdiction is relinquished.